No. 114,502

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JESSI L. BUCHANAN,
*Appellant*,

v.

JM STAFFING, LLC, and
COMMERCE & INDUSTRY INSURANCE CO.,
*Appellees.*

SYLLABUS BY THE COURT

1.

Decisions of the Workers Compensation Board are reviewed under the Kansas Judicial Review Act. We review the Board's factual findings to determine whether they are supported by substantial evidence.

2.

Substantial evidence is evidence that a reasonable person would accept as sufficient to support a conclusion. We review the Board's findings based on the record as a whole, including both evidence that supports its findings and evidence that detracts from its findings. While we do not reweigh the evidence, we do consider whether the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion.

3.

Under K.S.A. 2015 Supp. 44-508(f)(2)(B), the accident must be the prevailing factor in causing the worker's injury. That means that the accident must be the primary cause of the injury.

4.

Kansas caselaw has long provided that injured employees are entitled to compensation for any secondary injuries that are the natural and probable result of the primary injury; this is known as the secondary-injury rule. The amendments made to the Workers Compensation Act in 2011, which added the prevailing-factor requirement, did not eliminate the secondary-injury rule. After the addition of the prevailing-factor requirement, a secondary injury must be both the natural and probable consequence of the primary injury *and* caused primarily by the work accident to be compensable.

5.

On the facts of this case, the Board's decision was not supported by substantial evidence; the admitted evidence showed that the claimant's hip and back injuries were the natural and probable consequence of her primary injury and were primarily caused by her work accident.

Appeal from Workers Compensation Board. Opinion filed August 26, 2016. Reversed and remanded with directions.

*Jeff K. Cooper*, of Topeka, for appellant.

*Jodi J. Fox* and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellees.

Before LEBEN, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.

LEBEN, J.: In late May 2011, Jessi L. Buchanan was working on an assembly line when she tripped and fell, severely fracturing two of the three major bones in her ankle. After surgery, her ankle healed poorly, and she was left with lingering ankle pain, stiffness, swelling, and loss of range of motion, all of which cause her to limp and walk

2

with a cane. She claims that her ankle fracture and resulting limp have caused injuries to her hip and back. But an administrative law judge and the Kansas Workers Compensation Board disagreed (although two of the five Board members dissented), finding that Buchanan's accident wasn't the primary cause of her hip and back injuries and awarding her compensation only for the ankle injury. Buchanan appeals, arguing that the accident *was* the primary cause of her hip and back injuries.

The Board relied mostly on the testimony of the court-appointed medical expert, Dr. Pat Do, because he was a neutral party. But because Dr. Do didn't examine Buchanan's hip or back, there really is no substantial evidence to support Dr. Do's opinion testimony about what did—or didn't—cause Buchanan's back and hip pain. Additionally, the Board unnecessarily discredited the testimony of Buchanan herself. Thus, we find that the Board's factual conclusion that Buchanan's accident wasn't the primary cause of her hip and back injuries isn't supported by substantial evidence, and we reverse and remand the Board's decision.

FACTUAL AND PROCEDURAL BACKGROUND

May 22, 2011, was Buchanan's first day of work on the assembly line at Reser's, a job she obtained through JM Staffing. Reser's had put cardboard on the floor to soak up water, and Buchanan tripped on the cardboard and fell, fracturing two of the bones in her right ankle. She had surgery the same day, and Dr. Kurt Knappenberger repaired the fracture with screws and a plate. There's no question in this case about the ankle fracture itself or whether it was the result of a work accident—the dispute is about Buchanan's hip and back injuries that she claims resulted from her ankle fracture.

Dr. Knappenberger treated Buchanan for 8 months following the surgery. His records show that for the first 2 months, Buchanan didn't put any weight on her ankle; he didn't instruct her to begin trying to walk on it until her July 22, 2011, appointment. One

3

month later, at Buchanan's next appointment, Dr. Knappenberger's physician's assistant noted that Buchanan was limping and had decreased mobility, swelling, and stiffness. The physician's assistant prescribed physical therapy at this appointment. Dr. Knappenberger continued prescribing physical therapy through his last appointment with Buchanan in January 2012. His records show that Buchanan's physical therapist called on May 21, 2012, to request that he authorize additional appointments, so it appears that Buchanan was participating in physical therapy as late as 1 year after her injury and surgery.

Dr. Knappenberger's records show that as of January 2012, he believed Buchanan wouldn't recover any further and that her stiffness and loss of range of motion would likely be permanent, but the records don't mention any complaints of hip or back pain. At his deposition in March 2014, Dr. Knappenberger testified that this lingering stiffness and loss of range of motion are common following ankle fractures and that Buchanan's ankle fracture was on the more extreme end of the spectrum. He also noted that the stiffness and loss of range of motion would cause Buchanan to limp. Buchanan testified that Dr. Knappenberger had told her there was nothing else he could do for her ankle and recommended that she apply for disability.

As of January 2012, Dr. Knappenberger noted that Buchanan shouldn't work at all. In October 2012, he assigned her a 13% impairment rating for the injury to her right ankle based on the last time he saw her, but he noted that "this rating could change if the examination is any different than my examination of her ankle 10 months ago." His October 2012 report doesn't mention work restrictions at all, either to modify January's complete restriction or to impose new or different restrictions.

Dr. Pedro Murati, Buchanan's medical expert, examined Buchanan in December 2012; he examined her legs, feet, hips, and back. Dr. Murati testified that Buchanan had reported that her right hip and low back began hurting about 4 months after her surgery (2

4

months after she began trying to walk) and that she hadn't had any hip or back pain before her ankle injury. He stated that Buchanan's ankle fracture had been severe and that breaking both the inside and outside bones at the top of the ankle can make a full recovery very difficult. Dr. Murati testified that Buchanan's ankle fracture had caused her to limp and to use a cane to walk. He diagnosed Buchanan with low back pain with signs of radiculopathy, right sacroiliac joint dysfunction, and right trochanteric bursitis. Dr. Murati testified that Buchanan's right hip and low back injuries were caused by her limp and wouldn't improve as long as she continued to limp.

Dr. Do examined Buchanan in April 2014 at the request of the administrative law judge presiding over Buchanan's workers-compensation claim. Although Buchanan told Dr. Do about her hip and back pain, he only examined her right ankle. He noted that her range of motion was moderately restricted, that she had damage to the cartilage in her ankle, and that her arthritis, night pain, and trouble walking were consistent with this type of severe ankle injury. He testified that it was appropriate for Buchanan to use a cane to walk. In Dr. Do's opinion, Buchanan should limit standing and walking to no more than 33% of her day. According to Dr. Do, Buchanan's hip and back pain could have been caused by any number of things, including aging, wear and tear, and her limp, and he couldn't say within a degree of medical certainty which of these was the primary cause. Dr. Do also testified that because he wasn't sure Buchanan's hip and back pain would be permanent, he couldn't give an opinion about the prevailing cause of those injuries.

Two experienced vocational experts also testified: Karen Crist Terrill for Buchanan and Steve Benjamin for JM Staffing. Terrill relied primarily on Dr. Murati's report, which included work restrictions based on all of Buchanan's injuries: ankle, hip, and back. (She also relied on Dr. Knappenberger's report and a report from a Dr. Hufford, whose report isn't included in the record.) Based on these reports and on Buchanan's work history, Terrill concluded that Buchanan wasn't able to engage in any substantial gainful employment. On the other hand, Benjamin relied primarily on Dr. Do's restrictions,

5

which were based only on Buchanan's ankle injury, to conclude that there were some jobs that Buchanan could still do. Benjamin's report confirmed, however, that if he relied on Dr. Murati's broader restrictions, Buchanan wouldn't be able to find work. Benjamin also noted that his assessment of the work Buchanan would be able to do didn't account for her use of a cane.

Buchanan testified before administrative law judge Rebecca Sanders in January 2014. Buchanan has a high-school diploma and training as a welder. She described her work accident and testified that her hip and back pain developed as a result of her ankle fracture. She denied having any hip or back pain before the ankle fracture. She noted that she hadn't worked since the accident and that she receives Social Security disability benefits. Buchanan testified that she has trouble sleeping, has a hard time getting in and out of the bath, loses her balance when she bends over, can only stand up for 15 minutes at a time, has to elevate her leg when she sits down, can't bend over to pick up a basket of laundry, and has to lean against the counter to do the dishes.

For reasons not clear in our record, a different administrative law judge (Jerry Shelor, who didn't see Buchanan testify) made the initial ruling in the case. He awarded Buchanan temporary total disability and future medical treatment for her right ankle but found that her hip and back injuries weren't compensable because her work accident wasn't the prevailing factor in causing them. The judge relied on Dr. Do's conclusions because Dr. Do was a neutral, court-appointed expert.

Three members of the Kansas Workers Compensation Board affirmed the award over the dissent of the other two members. The majority found that Buchanan wasn't completely credible and accepted Dr. Do's testimony because he was a neutral expert. The dissent, on the other hand, argued that Dr. Do had misunderstood the prevailing-factor analysis and found Dr. Murati's opinion more persuasive because he had actually examined Buchanan's hip and back.

6

Buchanan has appealed to our court.

ANALYSIS

Buchanan argues that the Board wrongly determined that her work accident wasn't the prevailing factor in causing her hip and back injuries.

We review the Board's order under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq*. K.S.A. 2015 Supp. 44-556(a). We may grant relief only if, among other reasons not relevant here, the Board has wrongly interpreted or applied the law or if the Board's findings aren't supported by substantial evidence. K.S.A. 2015 Supp. 77-621(c)(4), (7). We have unlimited review over questions involving the interpretation of a statute, owing no deference to the Board's interpretation. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 (2010). Substantial evidence is evidence that a reasonable person would accept as sufficient to support a conclusion. *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009). We review the Board's factual findings based on the record as a whole, including both evidence that supports its findings and evidence that detracts from its findings. K.S.A. 2015 Supp. 77-621(d). While we do not reweigh the evidence or engage in unlimited review, we do consider "whether the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion." *Herrera-Gallegos*, 42 Kan. App. 2d at 363.

Throughout its brief, JM Staffing states that the Board's determination—that Buchanan didn't prove that her hip and back injuries are compensable—is a negative finding that we can disturb only if the Board arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias, passion, or prejudice. In support of

7

its position, JM Staffing cites a 2008 Kansas Supreme Court decision, *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, Syl. ¶ 3, 189 P.3d 508 (2008), but doesn't mention the 2009 statutory change to K.S.A. 77-621 that eliminated the negative-findings standard. See K.S.A. 2015 Supp. 77-621(c)(7), (d) (requiring that the reviewing court consider all the evidence, including evidence that "detracts from" the agency's findings). JM Staffing also leaves out the several opinions our court has issued since 2009 noting this change. *E.g.*, *Wimp v. American Highway Technology*, 51 Kan. App. 2d 1073, 1076-77, 360 P.3d 1100 (2015); *Olds-Carter v. Lakeshore Farms, Inc.*, 45 Kan. App. 2d 390, 395, 250 P.3d 825 (2011); *Herrera-Gallegos*, 42 Kan. App. 2d at 362. In our review, we must consider all of the evidence in the record and decide whether it's sufficient to support the Board's conclusions. See K.S.A. 2015 Supp. 77-621(d).

Changes to the Workers Compensation Act are also important in this appeal. Since May 15, 2011, the Act has provided that an injury caused by an accident only "arise[s] out of employment" if there is a "causal connection between the conditions under which the work is required to be performed and the resulting accident" and "the accident is the *prevailing factor* causing the injury, medical condition, and resulting disability or impairment." (Emphasis added.) K.S.A. 2015 Supp. 44-508(f)(2)(B); L. 2011, ch. 55, sec. 5. The addition of the prevailing-factor test is one part of a set of larger changes to the law: employees can no longer recover for injuries that are solely aggravations or accelerations of preexisting conditions. See *Le v. Armour Eckrich Meats*, 52 Kan. App. 2d 189, 193-94, 364 P.3d 571 (2015). Because a "prevailing factor" is "the primary factor, in relation to any other factor," the new test is especially relevant when an employee suffered a work accident but also had some preexisting condition. K.S.A. 2015 Supp. 44-508(g); see, *e.g.*, *Le*, 52 Kan. App. 2d at 200 (considering whether chronic pain following a back fracture was caused by preexisting osteoporosis or the work accident that caused the fracture). An employee can only recover if the accident, and not the preexisting condition, was the primary cause of injury. See *Le*, 52 Kan. App. 2d at 198-200; K.S.A. 2015 Supp. 44-508(f), (g).

8

Here, Buchanan's initial ankle fracture is undisputedly a compensable injury caused by an accident arising out of her employment: she was at work, where cardboard had been placed on the floor to soak up water, and she tripped on the cardboard, fracturing her ankle. The fall was caused by work conditions (the cardboard) and was the prevailing factor in her ankle fracture (in fact, the only factor, since she had no preexisting ankle injuries).

Additionally, since at least 1972, Kansas caselaw has provided that injured employees are also entitled to compensation for any secondary injuries that are the natural and probable result of the primary injury: this is known as the secondary-injury rule. *E.g., Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 515-16, 154 P.3d 494 (2007); *Jackson v. Stevens Well Service*, 208 Kan. 637, 643, 493 P.2d 264 (1972). No Kansas court has yet addressed how or whether the secondary-injury rule has been changed by 2011 statutory amendments, but nothing in the prevailing-factor test is incompatible with the secondary-injury rule. Both deal with causation in slightly different ways: the prevailing-factor test asks about the cause of an injury, particularly in relation to other possible causes, while the secondary-injury rule asks whether the primary injury caused the secondary one. Compare K.S.A. 2015 Supp. 44-508(g) with *Casco*, 283 Kan. at 515-16.

While we are not bound by its interpretation, the Board has taken the position that the 2011 amendments didn't change the secondary-injury rule but added the prevailing-factor analysis: a secondary injury must be both the natural and probable consequence of the primary injury *and* caused primarily by the work accident. *E.g.*, *Dawe v. The Arnold Group*, No. 1,067,719, 2014 WL 2616674, at *4 (Kansas Workers Compensation Board 2014) (applying prevailing-factor analysis and secondary-injury rule, finding that neck injury caused by compensating for an accidental shoulder injury was the natural and probable consequence of the shoulder injury and the work accident was the prevailing

9

factor); *Griffie v. Watson Services*, No. 1,064,916, 2014 WL 889875, at *6-7 (Kansas Workers Compensation Board 2014) (applying prevailing-factor analysis and secondary-injury rule, finding that left shoulder injury was caused by a genetic defect, not by compensating for right shoulder injury that had been caused by work accident); *Finton v. Peninsula Gaming Partners*, No. 1,064,118, 2013 WL 4779986, at *3-4 (Kansas Workers Compensation Board 2013) (applying prevailing-factor analysis and secondary-injury rule, finding that work accident was prevailing factor in a head injury that resulted from fainting after cutting finger at work and seeing blood). Because we view the secondary-injury rule and the prevailing-factor analysis as compatible and because the legislature didn't mention the secondary-injury rule in the 2011 amendments, we agree with the Board: all injuries, including secondary injuries, must be caused primarily by the work accident. See *State v. Quested*, 302 Kan. 262, 283, 352 P.3d 553 (2015) ("[C]ourts generally presume that the legislature acts with full knowledge of existing law.").

So if Buchanan's hip and back problems are compensable, they must (1) have been caused primarily by the work accident that caused the ankle fracture and (2) be the natural and probable consequence of the ankle fracture.

With these criteria in place, let's turn to the evidence. There was absolutely no evidence that Buchanan had any problems with her hip or back before the May 2011 ankle injury. Dr. Do suggested that Buchanan's hip and back pain may have been due to aging or "wear and tear," but that opinion is just speculation: he didn't examine her hip or back and said he had no reason to think she had any preexisting hip or back conditions, either from Buchanan herself or from her medical records. He ultimately testified that he simply couldn't say whether her hip and back pain was caused by the ankle fracture. Dr. Murati, on the other hand, examined Buchanan's hip and back and testified that the injuries to these areas were caused by the ankle fracture. Buchanan herself denied any preexisting hip or back problems, and the medical records don't show any either.

10

What does the evidence show about the cause of Buchanan's back and hip problems? Significantly, there's no real question that Buchanan's ankle fracture caused her to have a limp. Two months after surgery, Dr. Knappenberger told Buchanan that she should start trying to put weight on her right ankle. Dr. Knappenberger's records show that at her next appointment, after 1 month of weight bearing, Buchanan was limping and had decreased mobility, stiffness, and swelling in her ankle. Two months later, in October 2011, Buchanan was still limping and complaining of pain in her ankle. Dr. Knappenberger testified that Buchanan's limp could be inferred from the stiffness of her ankle; in other words, her decreased range of motion caused her to limp. Buchanan's stiffness, pain, and limp were still present in January 2012, at her last appointment with Dr. Knappenberger, and he noted that the stiffness and limping would likely be permanent: "The problem is not changing in character. The pain is aggravated by walking and standing. There are no relieving factors. Associated symptoms include difficulty going to sleep, feeling of instability, *lack of joint motion*, *limping*, night pain, *stiffness* and tenderness." (Emphasis added.) Dr. Knappenberger also noted: "It is clear that there will be permanent stiffness and loss of [range of motion]."

Both Dr. Murati and Dr. Do also noted that Buchanan had a limp and used a cane to walk, although Dr. Do's testimony on this point is not completely clear. Dr. Murati examined Buchanan in December 2012, about a year and a half after her injury. He noted that she had a "severe antalgic gait," also known as a limp, and that her use of a cane was appropriate. Dr. Do examined Buchanan in April 2014, 3 years after her injury. When asked if Buchanan had an altered gait, Dr. Do stated: "In my exam section I did not note that she had an altered gait." But Dr. Do's report does say that Buchanan was using a cane to walk, and he testified that her use of a cane was appropriate. Dr. Do also noted that she had moderate range-of-motion deficits, which Dr. Knappenberger had testified would cause a limp. All of this evidence, taken together, establishes that Buchanan has a limp that is likely to be permanent, caused by the stiffness and loss of range of motion that resulted from her ankle fracture.

Next, there was strong evidence that Buchanan's limp caused her hip and back pain: Dr. Murati, the only doctor involved in this case who actually examined Buchanan's hip and back, testified that Buchanan's hip and back pain was caused by her undisputed limp. Buchanan told Dr. Murati that her hip and back began hurting about 4 months after her surgery, or 2 months after she began bearing weight on her injured ankle—in other words, 2 months after she began limping. Dr. Murati diagnosed the hip and back injuries as low back pain with signs of radiculopathy, right sacroiliac joint dysfunction, and right trochanteric bursitis, all caused by the limp, which was a result of the stiffness and swelling in her right ankle. Dr. Knappenberger's testimony supports the proposition that stiffness and swelling in the ankle would cause a limp. Dr. Murati testified that as long as Buchanan was limping, her back wouldn't heal. And Dr. Knappenberger indicated that the symptoms causing Buchanan's limp were likely to be permanent.

Buchanan also testified that her hip and back pain are connected to her ankle injury. She said she hadn't had problems with her right leg or ankle, her hip, or her back before the accident at Reser's. She testified that her leg problems had caused the problems in her hip and back:

> "Q. What do you believe caused your back and your hip to become problematic?
> . . . .
> "A. . . . I believe it's because of my leg that twisted my—my leg got twisted and it messed my hip up some how some way, and my leg is kind of turning in. It doesn't work right. In other words, I just kind of feel like my leg got twisted and messed my hip up.
> "Q. What about your back?
> "A. That's what causes my back to hurt.
> "Q. Your hip causes your back to hurt?
> "A. Yes, the whole thing, yeah."

12

Despite this testimony and the medical evidence supporting it, the Board concluded that Buchanan's hip and back problems were *not* primarily caused by the work-related accident. The Board based its conclusion on two key pieces of evidence. First, Dr. Do, the court-appointed doctor, had said in his written report that the ankle injury didn't cause the hip and back pain "from a prevailing factor standpoint." Second, the Board discounted Buchanan's testimony on this point because it found no evidence that treatment was prescribed for her hip or back pain, and the Board concluded that her testimony wasn't credible because she contradicted herself about when her hip and back pain began: "Claimant testified her back and hip symptoms began when her accident occurred, but claimant told Dr. Murati her hip and back pain began around four months following her accident." We do not believe this evidence constitutes sufficient, substantial evidence to support the Board's conclusion that Buchanan's hip and back injuries were not caused by the work-related ankle injury.

Dr. Do's conclusion does not stand up in light of his testimony that he didn't examine Buchanan's hip or back and his ultimate testimony that he couldn't give an opinion on causation under the prevailing-factor analysis. Asked what the prevailing factor would be if Buchanan had had no hip or back problems before the ankle injury and had been limping and using a cane since May 2011, Dr. Do said he "really can't say within a reasonable degree of medical probability one way or the other per se." Similarly, having said that in his view a claimant must have "permanent structural change" or "at least a permanent aggravation" to pass the prevailing-factor test, Dr. Do agreed that he could not give an opinion on the prevailing-factor question because he didn't know whether Buchanan had any permanent damage to her back or hips. Dr. Do's testimony does not provide substantial evidence to support the Board's conclusion.

The Board's problem with Buchanan's testimony seems picayune when placed in context. Dr. Murati reported that Buchanan told him when he saw her in December 2012 that her hip and back pain began about 4 months after the accident; the Board accepted

13

that testimony. Then the Board concluded that Buchanan had told a completely different story when she gave this testimony in January 2014:

> "Q. Tell us about problems with your right ankle, why you use a cane.
> "A. The pain and the swelling. My foot won't pivot. It's messed my hip up. *My hip hurts ever since I've had the accident.* I've had a lot of pain to my hip and lower back." (Emphasis added.)

From that 2014 testimony, the Board concluded that Buchanan had been so inconsistent in her testimony about when she began to have hip and back pain that her testimony should be dismissed as unbelievable.

In context, Buchanan was asked—nearly 3 years after the accident—to explain why she used a cane. In response, she said that her hip had been hurting "ever since . . . the accident." The Board interpreted this answer to be a statement that her hip and back pain began at the exact same time as the ankle injury. But she wasn't responding to a question about when her back and hip began hurting. And nearly 3 years after the accident, a person could easily say that her hip had been hurting since the accident without even thinking about the relatively brief time (2 months) after surgery when she wasn't allowed to put *any* weight on her leg. That same person could easily overlook the following month or 2 when, after beginning to walk, others observed her limping and showing signs of decreased mobility, stiffness, and swelling—all preceding the hip and back pain she had consistently reported from 4 months after the accident and surgery (September 2011) until her 2014 testimony. In context, without a specific question about exactly when the hip and back pain began, a witness could quite easily say that she'd had it since the accident and surgery. Her response was an explanation about why she used a cane—something she attributed to the back and hip pain caused by the accident—not a detailed chronology of events. The Board's decision to disregard her testimony as wholly unreliable is not supported by substantial evidence.

14

In sum, then, the Board could not rely on Dr. Do's testimony to determine whether Buchanan's hip and back pain was caused by the ankle injury and could not altogether disregard Buchanan's testimony, especially on points that were corroborated by others, such as her consistent limp and the decreased mobility, stiffness, and swelling. While it's true that the records don't show any specific treatment for her hip and back pain (although Buchanan testified that physical therapists addressed it), there's also no evidence from any doctor that any treatment would have been useful.

We recognize that we do not make credibility determinations, but we are required to review the credibility determinations made by the Board as we determine whether substantial evidence supports the Board's decision. See K.S.A. 2015 Supp. 77-621(c)(7), (d). Here, given that Dr. Do did not examine Buchanan's hip or back and that Buchanan's testimony cannot be disregarded for an overall lack of credibility based on the testimony cited by the Board, we are left with Dr. Murati's causation opinion and substantial evidence supporting it. There's no suggestion in the record on appeal that Buchanan's pain isn't real, and there was evidence that her ankle stiffness and limp are likely to be permanent and that her back won't heal as long as she's limping. Dr. Murati's diagnosis of low back and hip conditions, because it's based on an actual examination of Buchanan's back and hip, deserves more weight than Dr. Do's opinion. Neutrality isn't the only marker of credibility; an expert's conclusions, to be reliable, should be based on more than speculation. See K.S.A. 2015 Supp. 77-621(d).

The Board said that the work accident wasn't the prevailing factor in causing the hip and back injuries—in other words, that it wasn't the primary cause, in relation to other causes. See K.S.A. 2015 Supp. 44-508(g). But there was no evidence of other causes. There was only Dr. Do's unfounded supposition that her hip and back injuries might have been caused by aging or wear and tear rather than by her limp. The Board's actual conclusion, based as it was on Dr. Do's testimony, seems to have been that Buchanan's

15

hip and back simply weren't injured. But there was plenty of evidence from Buchanan herself and from Dr. Murati that she suffers from significant pain in her right hip and low back. See *Hanson v. Logan U.S.D. 326*, 28 Kan. App. 2d 92, 95, 11 P.3d 1184 (2000) (a claimant's testimony, standing alone, is sufficient to prove her condition), *rev. denied* 270 Kan. 898 (2001).

We should also note that the evidence shows that Buchanan's hip and back injuries were the natural and probable result of her ankle injury. See *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, 197-98, 201, 547 P.2d 751 (1976) (injury to claimant's knee caused change in posture and gait, which resulted in a disability in claimant's back). Dr. Knappenberger's records show that he thought, as of 8 months after surgery, that Buchanan's stiffness and loss of range of motion were likely to be permanent. He testified that these symptoms would cause her to limp. Dr. Murati testified that Buchanan's limp caused the hip and back pain, which wouldn't heal as long as she continued to limp. There was no evidence of any other accident—and no evidence of any preexisting condition—that could have caused the hip and back pain.

Finally, JM Staffing argues that Buchanan isn't entitled to future medical expenses for either her ankle injury or for her hip and back pain. The Board awarded Buchanan future medical expenses for her ankle, based on Dr. Murati's recommendations, and JM Staffing abandoned its argument against that award when it failed to file a cross-appeal. *State v. Novotny*, 297 Kan. 1174, 1181, 307 P.3d 1278 (2013); see K.S.A. 2015 Supp. 60-2103(h) (to obtain appellate review of adverse rulings, appellee must file notice of cross-appeal). JM Staffing could argue that Buchanan isn't entitled to future medical expenses for her hip and back, but that argument fails because we have found that Buchanan's hip and back pain were caused by the work accident and are compensable.

16

We reverse and remand to the Board for an award consistent with our conclusions that the ankle fracture was the prevailing cause of Buchanan's hip and back pain and that the hip and back pain is the natural and probable consequence of the ankle fracture.