NOT DESIGNATED FOR PUBLICATION

No. 121,811

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EVELYN GUZZO,
*Appellant*,

v.

HEARTLAND PLANT INNOVATIONS INC.,

and

EMCASCO INSURANCE CO.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed July 16, 2021. Affirmed.

*Roger D. Fincher*, of Fincher Law Office, of Topeka, for appellant.

*Katie M. Clifford*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellees.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: In July 2017, Evelyn Guzzo was injured while working for Heartland Plant Innovations (Heartland). After she filed for workers compensation, two doctors gave their medical opinions on Guzzo's partial functional impairment rating under the Fourth and Sixth Editions of the American Medical Association (AMA) Guides. The Workers Compensation Board (Board) found Guzzo suffered a 6% impairment under the Sixth Edition of the AMA Guides. Guzzo appeals the Board's decision not to stay the proceeding, challenges the constitutionality of the functional

1

impairment statute's reference to the Sixth Edition of the AMA Guides, and argues that the Board's factual findings lack substantial competent evidence. Finding no error, we affirm.

*Factual and Procedural Background*

Guzzo is a 70-year-old woman who was working with planter pots for Heartland in July 2017 when she injured her right wrist. Because the pots were stuck together, Guzzo had to slam the pots against a steel table to separate them. After doing this for several hours to several thousand pots, Guzzo's wrist began to hurt. Her wrist swelled over the weekend, and she was unable to perform her job on Monday morning. When Guzzo reported the injury, Heartland sent her to Dr. William Jones, an occupational therapist. Because the wrist pain did not get better, Guzzo elected to have him perform surgery on her arm just above the wrist to repair a torn tendon.

During her postoperation appointment in February 2018, Dr. Jones examined Guzzo's wrist by having her squeeze his hand. At that appointment, Guzzo reported she had minimal pain, and Dr. Jones believed she had attained full range of motion. He released Guzzo as having attained maximum medical improvement. The parties later asked Dr. Jones to provide an impairment rating under both the Fourth and Sixth Editions of the Guides based on his last appointment with Guzzo, and he did so.

Guzzo applied for a preliminary hearing. Her brief argued that the Administrative Law Judge (ALJ) should use the functional impairment ratings under the Fourth Edition, rather than the Sixth Edition, of the AMA Guides. As support, she cited a decision by a panel of this court that had recently found unconstitutional the Kansas statute that required use of the Sixth Edition. See *Johnson v. U.S. Food Service*, 56 Kan. App. 2d 232, 257, 427 P.3d 996 (2018) (*Johnson I*), *overruled by Johnson v. U.S. Food Service*, 312 Kan. 597, 478 P.3d 776 (2021) (*Johnson II*).

Guzzo later hired Dr. Daniel Zimmerman for a second opinion on her functional impairment rating. During the only time she saw him, he conducted several objective tests of Guzzo's wrist impairment. Dr. Zimmerman measured her loss of range of motion with a goniometer and her loss of grip strength with a dynamometer. He then provided functional impairment ratings under both the Fourth and Sixth Editions.

Dr. Jones, the treating physician, testified in his deposition that he evaluated Guzzo from her initial complaint of pain and discomfort in December 2017 until he released her from his care at maximum medical improvement in February 2018. In his medical opinion, the surgery succeeded because it fixed Guzzo's pain and gripping problems. On Guzzo's last visit, Dr. Jones asked her to do a grip test by grabbing his wrist and palm. Dr. Jones did not use any tools and relied only on visual cues and the grip test. He based his impairment rating on his evaluation of her wrist strength according to the step-by-step recommended procedure for determining site-specific impairment within the Guides. Dr. Jones assessed a Sixth Edition rating of 0% and a Fourth Edition rating of 7%.

Because Guzzo had sought a second medical opinion, the parties deposed Dr. Zimmerman as well. He evaluated Guzzo in a single appointment for the purpose of her workers compensation claim. He followed the step-by-step recommended procedure to evaluate her functional wrist impairment and provided detailed testimony about each page and graph he relied on, as well as the measuring tools he used to reach his impairment ratings. Dr. Zimmerman issued an impairment rating of 6% under the Sixth Edition and 24% under the Fourth Edition of the Guides.

The ALJ held a regular hearing at which Guzzo testified to her work-related injuries and the various tests and measurements of her wrist impairment. She stated that when she saw Dr. Jones after surgery, she was with him for only a few minutes and he had her squeeze his hands to test her strength. In contrast, she spent about an hour with

3

Dr. Zimmerman who had her perform tasks with various tools to measure her wrist impairment. She could not return to work fulltime because her training was based in fine motor skills but those tasks are difficult because of her wrist injury. She also had limited range of motion and reduced strength, which made her unable to open a water bottle.

The ALJ issued his decision in March 2019. He reviewed the regular hearing transcript, the parties' stipulations, and both depositions, and he discussed the methods each doctor used to evaluate impairment. The ALJ determined that Dr. Zimmerman's objective measurements and explanation of how he came to the impairment ratings based on those measurements was more credible than Dr. Jones' opinion. The ALJ found Guzzo suffered a 6% impairment of the function to the right upper extremity at the level of the forearm under the Sixth Edition of the Guides, as had Dr. Zimmerman. Because *Johnson I* was pending review in the Kansas Supreme Court, the ALJ alternatively found Guzzo suffered an 18% impairment under the Fourth Edition of the Guides. The ALJ awarded medical expenses and future medical expenses upon agreement of the parties or on proper application. The ALJ also awarded Guzzo 8.96 weeks of temporary total disability combined with temporary partial disability followed by 11.46 weeks of permanent partial disability compensation for a total award of $5,860.95.

Both Guzzo and Heartland appealed to the Workers Compensation Appeals Board. The parties appealed several issues, including whether the Sixth Edition mentioned in the Workers Compensation Act is unconstitutional, whether Guzzo met her burden of proof in establishing need for future medical compensation, and the nature and extent of Guzzo's impairment.

The Board issued its order in August 2019. It reviewed the record before the ALJ, the ALJ's final decision, and the stipulations in the previous award. The Board declined to rate Guzzo's impairment by using the Fourth Edition ratings—since *Johnson I* was under a petition for review, its holding (that the statute requiring use of the Sixth Edition

4

was unconstitutional) had no effect. See Supreme Court Rule 8.03(k)(2) (2021 Kan. S. Ct. R. 54) (if petition for review is granted, Court of Appeals' decision has no force or effect). Thus, the Board considered the statute mandating use of the Sixth Edition to be constitutional and it upheld the Sixth Edition award by the ALJ. The Board then determined that Dr. Zimmerman had evaluated Guzzo's condition more thoroughly than Dr. Jones did, even though he saw her only once. The Board adopted Dr. Zimmerman's rating of 6% under the Sixth Edition.

During oral argument, a member of the Board asked the parties whether they wished to stay the proceedings until our Supreme Court decided *Johnson I*. Guzzo agreed to a stay, but Heartland opposed it. Neither party formally requested a stay. In its decision, a majority of the Board found it lacked authority to issue a stay under K.S.A. 77-616(a) and K.S.A. 2020 Supp. 44-556(b). One Board member dissented, arguing the Board had statutory authority to issue a stay until the *Johnson I* decision was final.

Guzzo timely appeals.

*Does the Board Have the Authority to Stay a Workers Compensation Proceeding in Anticipation of a Potential Change in the Controlling Law?*

We first address Guzzo's argument that the Board erred by finding that neither the Workers Compensation Act, K.S.A. 44-501 et seq., nor the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., authorized it to stay workers compensation proceedings in anticipation of a potential change in the controlling law by the Supreme Court. Heartland responds that the Board correctly found that it has no such authority.

*Preservation*

Heartland first argues that because Guzzo did not formally request a stay, she cannot complain on appeal about the Board's failure to issue one. We agree. Because Guzzo did not formally request a stay, she failed to preserve the issue. See *Tapp v. Ferrell Const. Co.*, No. 95,004, 2006 WL 2337246, at *1 (Kan. App. 2003) (unpublished opinion).

Generally, "[a]dministrative agencies are creatures of statute and their power is dependent upon authorizing statutes, therefore any exercise of authority claimed by the agency must come from within the statutes. There is no general or common law power that can be exercised by an administrative agency." *Pork Motel, Corp. v. Kansas Department of Health & Environment*, 234 Kan. 374, 378, 673 P.2d 1126 (1983). Because agencies lack common-law powers, "[a]ny authority claimed by an agency or board must be conferred in the authorizing statutes either expressly or by clear implication from the express powers granted." *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 455, 228 P.3d 403 (2010).

"K.S.A. 77-616 controls the procedure to obtain a stay of a decision of the Board." *Nuessen v. Sutherlands*, 51 Kan. App. 2d 616, 621, 352 P.3d 587 (2015). The KJRA states an agency may grant a stay on appropriate terms during judicial review. K.S.A. 77-616(a). By allowing the Board to "grant" a stay, the statute implies that there must first be a request to grant made by one of the parties. See K.S.A. 77-616(b). Black's Law Dictionary defines "grant" to mean "to permit or agree to" or "to approve, warrant, or order (a request, motion etc.)." Black's Law Dictionary 844 (11th ed. 2019). And other provisions of the statute provide that a party must make some "application" to the Board for a stay. K.S.A. 77-616(c), (d), and (e).

Our caselaw reflects that ruling. For example, in *Gould v. Wright Tree Service Inc.*, No. 116,008, 2018 WL 1545789, at *3 (Kan. App. 2018) (unpublished opinion), we found: "The KJRA does not provide for an automatic stay but rather gives the Board the discretion to grant a stay upon request unless otherwise precluded by law." That finding reaffirmed our holding in *Nuessen*:

> "K.S.A. 77-616(a) states the Board may grant a stay during the pendency of the judicial review unless otherwise precluded by law. Additionally, K.S.A. 77-616(b) provides that a party may request a stay while the case is under judicial review by filing a motion in the reviewing court. Significantly, K.S.A. 77-616 does not provide for an automatic stay. Instead, it provides that a stay may be granted upon request of a party to the appeal.
>
> "Moreover, there is no mention of an automatic stay in K.S.A. 2014 Supp. 44-556(b)." 51 Kan. App. 2d at 620 (discussing Board's ability to impose a stay on payment of compensation awards when requested by the parties).

Neither party here requested a stay.

True, one member of the Board asked whether the parties wanted a stay. But a previous panel of this court held that the Board should not raise substantive issues sua sponte. See *Goss v. Century Mfg., Inc.*, No. 108,367, 2013 WL 3867840, at *4 (Kan. App. 2013) (unpublished opinion) (finding Board cannot look at objectionable rulings made by ALJ and decide them without request for review from either party). We agree that the Board should not raise nonjurisdictional issues sua sponte. See *Huffmier v. Hamilton*, 30 Kan. App. 2d 1163, 1166, 57 P.3d 819 (2002) (holding that "[i]t is error for a trial court to raise, *sua sponte*, nonjurisdictional issues"). Because neither party officially requested a stay from the Board, the issue was not preserved for appeal.

*Harmless Error*

Alternatively, even assuming the issue was adequately preserved, we find the Board's decision not to stay the case pending a decision by our Supreme Court was harmless.

Even if the statutes give the Board the authority to stay an unrelated proceeding in anticipation of a change in the controlling law, the Board's denial of a stay caused no harm to Guzzo. K.S.A. 77-621(e); *In re Certificate of Need App. by Community Psychiatric Centers, Inc.*, 234 Kan. 802, 805-06, 676 P.2d 107 (1984) ("Error which does not prejudice the substantial rights of [a party] affords no basis for reversal of an administrative determination and must be disregarded."). This is because our Supreme Court overturned the Court of Appeals' decision in *Johnson I*, and found the statute's reference to the Sixth Edition constitutional. See *Johnson II*, 312 Kan. at 601-03. So even if the Board erred by not issuing a stay, that error did not harm Guzzo because the Board relied on the Sixth Edition—the proper edition—in making its functional impairment ratings.

*Is K.S.A. 2020 Supp. 44-510e(a)(2)(B) Unconstitutional?*

Guzzo next argues the Board's use of the Sixth Edition of the AMA Guides to rate her functional impairment is unconstitutional because it is not an adequate substitute remedy, as required by section 18 of the Kansas Constitution Bill of Rights. Guzzo alleges that the 2013 amendment to K.S.A. 2020 Supp. 44-510e(a)(2)(B), which changed the applicable AMA Guides from the Fourth Edition to the Sixth Edition for injuries after January 1, 2015, is unconstitutional.

Guzzo wrote her brief before the Kansas Supreme Court decided *Johnson II*. *Johnson I* had found K.S.A. 2020 Supp. 44-510e(a)(2)(B) unconstitutional on its face. 56

8

Kan. App. 2d. at 255. *Johnson II* reversed, finding that the statute did not violate due process because the language added in the 2013 amendment did not change the essential legal standard for determining functional impairment. 312 Kan. at 603. The amendment merely updated the most recent set of Guides, which is only a starting point for a medical opinion on impairment. As stated in *Johnson II*:

> "It is equally reasonable to interpret the legislative choice of the language 'based on the sixth edition' as supplanting only the parallel phrase applicable to injuries prior to 2015— i.e., 'based on the fourth edition.' This would leave intact the primary substantive effect of the statute which is to define the extent of the injury to be a percentage of functional impairment 'as established by competent medical evidence.'" 312 Kan. at 601-02.

*Johnson II* is dispositive and defeats Guzzo's argument that K.S.A. 2020 Supp. 44-510e(a)(2)(B)'s requirement to use the Sixth Edition to rate functional impairment is unconstitutional.

*Does Substantial Competent Evidence Support the Board's Factual Findings?*

Last, Guzzo argues that we should find that the Board's decision lacked substantial competent evidence.

Guzzo argues that "the ALJ's decision is not supported by substantial competent evidence because Dr. Zimmerman's rating of 24% under the fourth edition of the AMA Guides is more credible than Dr. Jones[']." But that argument assumes, among other matters, that the Fourth Edition of the Guides should apply here. As the Kansas Supreme Court found in *Johnson II*, the Sixth Edition and not the Fourth Edition applies. Thus, this argument lacks merit.

Guzzo also argues that the ALJ erred by discrediting Dr. Jones' Sixth Edition rating as conclusory—yet it did not find Dr. Jones' Fourth Edition rating conclusory, and

9

Dr. Jones testified that he used the same step-by-step procedure in reaching his ratings under both editions. Guzzo thus alleges that the ALJ's analysis is inconsistent.

*Applicable Law*

The appellate court reviews appeals from the Workers Compensation Board under the KJRA. *Welty v. U.S.D. No. 259*, 48 Kan. App. 2d 797, 799, 302 P.3d 1080 (2012). Under the KJRA, a court reviewing an administrative action grants relief only if it determines that the agency violated one or more of the provisions listed in the subsection of KJRA's provision governing scope of review, K.S.A. 77-621(c). *Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 52 Kan. App. 2d 96, 107, 363 P.3d 1115 (2015).

We broadly construe Guzzo's brief to argue that the ALJ did not make a fair credibility determination of the two doctors. Although Guzzo targets the *ALJ's findings*, we may grant relief only if the *Board's findings* are not supported by substantial competent evidence. K.S.A. 77-621(c)(7). "Substantial evidence is evidence that a reasonable person would accept as sufficient to support a conclusion." *Buchanan v. JM Staffing*, 52 Kan. App. 2d 943, 948, 379 P.3d 428 (2016). This court reviews the Board's factual findings based on the record as a whole, including the ALJ's credibility determination, and any evidence that detracts from the Board's findings. K.S.A. 77-621(d). So although Guzzo alleges that the *ALJ's decision* lacked substantial competent evidence, we review the Board's factual findings and only the credibility determination of the ALJ. See *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

A reviewing court's responsibility is to examine the record as a whole to determine whether the Board's factual determinations are supported by substantial evidence. K.S.A. 77-621(c)(7). To determine whether substantial evidence exists, this court

must "(1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings. The court does not reweigh the evidence or engage in de novo review." *Williams*, 299 Kan. at 795.

Although we do not reweigh evidence, we consider "'whether the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion.'" *Buchanan*, 52 Kan. App. 2d at 948.

*Evidence Supporting and Contradicting the Agency's Findings*

We first review evidence both supporting and contradicting the Board's findings. See *Williams*, 299 Kan. at 795. After unsuccessful therapeutic treatment, Guzzo was referred to Dr. Jones, a board-certified orthopedic surgeon. Because therapy did not succeed, Dr. Jones performed surgery on Guzzo's wrist to release the first dorsal compartment. Dr. Jones saw Guzzo in follow-up after surgery and Guzzo appeared to be healing well and without complication. During Guzzo's last visit she had minimal complaints of pain. When asked to provide a rating under the AMA Guides to the Evaluation of Permanent Impairment, Sixth Edition, Dr. Jones rated Guzzo at a 0% impairment of function. Jones did not provide a detailed explanation but merely stated he followed the Guides' recommended step-by-step procedure.

At the request of Heartland's attorney, Dr. Jones later found a 7% whole body impairment under the Fourth Edition. Dr. Jones' assessment stemmed from his examination findings in February 2018, when Guzzo was asymptomatic. Dr. Jones did not perform any objective measurements, such as with a goniometer or dynamometer. Rather, he relied on visual cues of an apparent full range of motion in Guzzo's wrist. Dr. Jones then had Guzzo grip his hand to assess her grip strength, rather than use a tool that

would objectively measure Guzzo's grip strength. Dr. Jones testified in his deposition that although he operated on the wrist, he believed Guzzo's impairment stemmed from her thumb.

Dr. Zimmerman examined Guzzo, giving a second opinion on her impairment. Dr. Zimmerman noted Guzzo reported ongoing pain and discomfort and decreased grip strength. He measured Guzzo's range of motion in her right wrist with a goniometer and her loss of grip strength with a dynamometer. When asked to provide ratings under the AMA Guides, Dr. Zimmerman rated Guzzo's impairment of function to her right forearm as 6% under the Sixth Edition and 24% under the Fourth Edition. And he explained the steps he took and referenced the supporting page and table numbers in the Guides.

Although Guzzo hired Dr. Zimmerman only to provide an impairment rating, this fact does not necessarily detract from the evidence because Dr. Zimmerman's ratings stem from objective and more thorough testing, while Dr. Jones' ratings do not.

*The ALJ's Credibility Determination*

Second, although we do not reweigh evidence, we review the credibility determinations made by the ALJ to determine whether substantial evidence supports the Board's decision. See *Buchanan*, 52 Kan. App. 2d at 955. The ALJ discounted Dr. Jones' opinion because it could not reconcile how Dr. Jones found no impairment under the Sixth Edition yet significant impairment of 12% under the Fourth Edition. The record shows, however, that Dr. Jones found a 12% impairment of the hand which he stated was equal to 7% impairment of the whole person. Yet because Dr. Jones failed to articulate how he arrived at the Sixth Edition rating, the ALJ found Dr. Zimmerman's more objective testing more reliable.

The Board agreed that Dr. Zimmerman had more thoroughly evaluated Guzzo's injuries. The ALJ discounted Dr. Jones' rating under the Sixth Edition because he did not objectively measure either Guzzo's range of motion or her grip strength. The ALJ determined that Dr. Zimmerman's objective measurements and explanation of how he came to the impairment ratings based on those measurements was more credible than Dr. Jones' opinion.

The Board thus adopted the ALJ's decision to find a 6% impairment to Guzzo's wrist. Given that Dr. Jones did not go into considerable detail on how he came to his impairment rating conclusions, and that he also did not measure Guzzo's impairment by any objective means, the ALJ's credibility findings are sound. The Board's reliance on those findings is similarly sound.

*The Agency's Explanations as to Why the Evidence Supports Its Findings*

Last, we consider the agency's explanations as to why the evidence supports its findings. In its written order, the Board gave a detailed explanation of all the evidence and how the law applied to that evidence. The Board found that Dr. Zimmerman did a more thorough evaluation of Guzzo's condition than Dr. Jones. Although the Board's explanation is not long, the record shows that the Board gave each doctor and both parties a fair review. And Guzzo fails to show that the "'the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion.'" *Buchanan*, 52 Kan. App. 2d at 948.

Considering all the evidence in light of the record as a whole, including the ALJ's credibility determination, we find the Board's factual finding of a 6% functional impairment rating of Guzzo's wrist under the Sixth Edition of the AMA Guides is supported by substantial competent evidence.

Affirmed.