No. 110,761[1]

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NAM LE,
*Appellant*,

v.

ARMOUR ECKRICH MEATS,

and

SAFETY NATIONAL CASUALTY CORPORATION,
*Appellees*.

SYLLABUS BY THE COURT

1.

Appeals from decisions by the Workers Compensation Board are governed by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, to determine if the Board's findings are supported by substantial evidence based on the record as a whole. K.S.A. 2013 Supp. 77-621(c)(7). In making this determination, the reviewing court does not reweigh the evidence or engage in de novo review. K.S.A. 2013 Supp. 77-621(d).

2.

Statutory interpretation is a question of law over which appellate review is unlimited. The interpretation of a statute by an administrative agency is not binding on the appellate court. The appellate court may grant relief if it finds the Board erroneously interpreted or applied the law. K.S.A. 2013 Supp. 77-621(c)(4).

---

[1]**REPORTER'S NOTE:** Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish under Rule 7.04 (2015 Kan. Ct. R. Annot. 64). The published version was filed with the Clerk of the Appellate Courts on December 14, 2015.

3.

Prior to 2011, well-established workers compensation law provided that when a worker's job duties aggravated or accelerated an existing condition or disease or intensified a preexisting condition, the aggravation became compensable as a work-related accident. The 2011 amendments changed the scope of a compensable injury. K.S.A. 2011 Supp. 44-508(f)(2) provides that an injury is not compensable solely because it aggravates, accelerates, or exacerbates a preexisting condition or renders a preexisting condition symptomatic.

4.

K.S.A. 2011 Supp. 44-508(d) defines the term "accident" and provides that the "accident" must be the prevailing factor in causing the injury.

5.

Under K.S.A. 2011 Supp. 44-508(f)(2), accidental injuries resulting in a new physical finding, or a change in the physical structure of the body, are compensable despite the claimant also having sustained an aggravation of a preexisting condition.

6.

Under K.S.A. 2011 Supp. 44-508(f)(2)(B)(ii), the accident must be the prevailing, or primary, factor causing the injury, medical condition, and resulting disability or impairment.

7.

While a reviewing court does not substitute its view for that of the Board on issues of credibility, the court may determine whether a testifying medical expert's testimony provided substantial evidence to support the Board's decision.

8.

When a worker's chronic pain is part of a compensable injury, the employer has the duty to provide the services of a health care provider as may be reasonably necessary to cure and relieve the employee from the effects of the injury.

Appeal from Workers Compensation Board. Opinion filed October 24, 2014. Reversed and remanded with directions.

*Jeff K. Cooper* and *Gary M. Peterson*, of Topeka, for appellant.

*Matthew J. Schaefer* and *Dallas L. Rakestraw*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellees.

Before POWELL, P.J., MCANANY, J., and BUKATY, S.J.

MCANANY, J.:  Nam Le, who had preexisting but asymptomatic osteoporosis, fell at work and suffered a vertebral fracture at the T-10 level. The fracture healed, but Le continued to suffer pain which prevented her from returning to work. The administrative law judge (ALJ) found Le was permanently and totally disabled and entitled to future medical benefits on account of her injury, including pain management care for her chronic pain. On appeal, the Workers Compensation Board set aside the finding that Le was permanently and totally disabled and limited her award to a 15% permanent partial general disability and authorized future medical treatment only for the fracture. Le appeals the Board's decision.

*Facts*

Le has a high school education. She came to the United States from Vietnam in 1991. She speaks very little English and is unable to read or write English. She worked for Armour for almost 12 years doing line food production packing. On August 8, 2011,

Le slipped and fell on a concrete floor, injuring her back. We need not recount here the facts surrounding her accident, her preexisting osteoporotic condition, or the medical treatment that followed. Those facts are well known to the parties and are set forth in detail in the findings of the ALJ and the Board.

Three medical doctors testified about Le's condition.

Dr. David Johnson, Le's family doctor since November 2009, treated Le both before and after the accident. He testified about Le's preexisting osteoporosis and the treatments she received for it. He characterized Le's preexisting osteoporosis as severe but asymptomatic. He stated that osteoporosis is inherently asymptomatic and only becomes symptomatic with an injury. Dr. Johnson has not observed anything that would lead him to believe that Le has suffered a new fracture since her work accident. He does not challenge the conclusion that Le's fracture from the accident has healed. But Le was fully capable of working before the accident, and but for the accident she would still be working. The pain Le has experienced since the accident was caused by the fall and the resulting fracture, and her inability to work has been caused by her chronic pain.

Dr. Pedro Murati examined Le twice but did not treat her. He testified that Le's osteoporosis is not itself painful and her pain was associated with her compression fracture. He diagnosed Le with a greater than 50% thoracic compression fracture and low back pain with radiculopathy. He assigned her a 24% whole person impairment rating. He opined that she suffered an 86% task loss and was essentially and realistically unemployable because of her chronic pain. In his opinion, it was Le's compression fracture, not her osteoporosis, that prevented her from returning to the labor market. Dr. Murati testified Le would need pain medication as a result of her injury for the rest of her life.

4

Dr. John Ciccarelli first saw Le a month after her fall. He found that the fracture was caused by Le's fall, although her osteoporosis was a significant contributing factor. He suspected Le's bones were very brittle and predisposed her to the fracture she experienced, but the prevailing factor causing the fracture was her work accident. According to Dr. Ciccarelli, Le should not return to work due to her osteoporosis. She continued to complain of pain and her pain was real, but Dr. Ciccarelli did not take that into account in deciding not to issue work restrictions because the fracture had healed and "structurally the spine [was] capable." Le's fracture, once healed, did not require any permanent work restrictions. He stated, "I make the recommendations for restrictions more based on what I feel structurally the spine is capable [of] and not necessarily just pain complaints."

When he last saw Le in January 2012, about 5 months after her fall, Dr. Ciccarelli did not believe Le's fracture would require future treatment. But he reported he was "writing for her a separate prescription that would keep her out of her job secondary to her underlying osteoporosis and not based upon her previous work injury." When he last saw Le, she complained of pain and, though she tried to work, she could not make it through the day. He was of the opinion that Le's pain was real.

Dr. Ciccarelli stated he would expect a fracture patient who suffers a minimal loss of height in the fracture of a vertebral body "to be sore up to a year following these types of fractures." But he acknowledged that here, Le suffered a 50% loss in height of the vertebral space, which was the result of "a significant fracture." In any event, Dr. Ciccarelli stated that Le had advance stage osteoporosis, and "a very common complaint of someone with osteoporosis is chronic pain" without evidence of a specific trauma or identifiable fracture. He acknowledged, however, that he had no indication she suffered from chronic pain before the work accident.

5

In Dr. Ciccarelli's opinion Le sustained a 20% functional impairment, but 5% was due to her osteoporosis, leaving her with a permanent partial impairment rating of 15%. Considering only the healed fracture and disregarding her ongoing pain, Dr. Ciccarelli was of the opinion that she did not suffer any task loss. He opined that Le was not in need of future medical care for her fracture but needed ongoing care for her osteoporosis which, if untreated, could cause chronic pain.

The ALJ noted that prior to the accident, Le was able to work full time without limitations despite her osteoporosis, but after the accident she was severely limited in what she could do on account of her pain. Based on Le's personal background, her chronic pain, and the opinions of Drs. Johnson and Murati, she determined that Le was not capable of substantial gainful employment and was entitled to benefits for being permanently and totally disabled. Further, Le was entitled to future medical benefits, including pain management care.

On appeal, the Board adopted Dr. Ciccarelli's impairment opinion and determined that Le suffered a 15% permanent partial whole person functional impairment. The Board found that Le's inability to return to work was not caused by her fracture but rather by her osteoporosis. The Board disregarded Dr. Murati's impairment rating regarding Le's lower back pain and radiculopathy because these symptoms were not a result of her fracture. The Board limited Le's future medical treatment to treatment for her vertebral fracture. Le appeals.

*Appellate Review*

As directed by K.S.A. 2013 Supp. 44-556(a), we review the Board's order pursuant to the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*., to determine if the Board's findings are supported by substantial evidence based on the record as a

6

whole. K.S.A. 2013 Supp. 77-621(c)(7). In doing so, we do not reweigh the evidence or engage in de novo review. K.S.A. 2013 Supp. 77-621(d).

We have unlimited review of questions involving the interpretation or construction of a statute, owing "'no significant deference'" to the Board's interpretation or construction. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 457, 228 P.3d 403 (2010). We may grant relief if we determine the Board erroneously interpreted or applied the law. K.S.A. 2013 Supp. 77-621(c)(4). In making that determination, we apply the law de novo to undisputed facts. *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 587, 257 P.3d 255 (2011).

*Permanent Total Disability—Effect of Preexisting Condition*

Before the 2011 amendments to the Act, it had been "well established under the workers compensation law in Kansas that when a worker's job duties aggravate or accelerate an existing condition or disease or intensify a preexisting condition, the aggravation becomes compensable as a work-related accident." *Poff v. IBP, Inc.*, 33 Kan. App. 2d 700, 708-09, 106 P.3d 1152 (2005). The injured worker was entitled to compensation for any increase in the amount of functional impairment associated with the aggravation. See K.S.A. 2010 Supp. 44-501(c).

But Le's accident occurred several months after the 2011 amendments to the Act were effective. With these amendments a compensable injury was limited as follows: "An injury is not compensable solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic." K.S.A. 2011 Supp. 44-508(f)(2).

While we have not interpreted the new language in K.S.A. 2011 Supp. 44-508(f)(2), numerous Board decisions since this amendment have done so. See *Allen v.*

7

*Cleary Building Corp.*, No. 1,063,145, 2014 WL 1758038, at *6-7 (Kan. Work. Comp. App. Bd. 2014) (citing six Board decisions interpreting K.S.A. 2011 Supp. 44-508[f][2]).

*Allen v. Cleary Building Corp.*

In *Cleary*, authored by Board member David A. Shufelt, the claimant had a long history of injuries to his cervical spine. He then reinjured his neck at work. The ALJ entered a preliminary order for benefits, and the respondent appealed to the Board, arguing in part that the claimant's injury was not compensable because it was an aggravation of a preexisting condition. The Board reviewed the claimant's medical records and confirmed that he had a disk protrusion at the C6-C7 level that had not been present in his previous MRIs in addition to medical findings in areas of his cervical spine that had previously been injured. The Board stated:

> "It seems clear the Kansas legislature, in enacting the May 15, 2011, amendments to the Act, intended to limit recover in claims involving aggravations of preexisting conditions or which render preexisting conditions symptomatic. However, the legislature chose to use the term 'solely' in conjunction with the word 'aggravates' in K.S.A. 2012 Supp. 44-508(f)(2). 'Solely' must be provided its plain meaning. The Kansas Supreme Court held in [*Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607-08, 214 P.3d 676 (2009)], as follows:
>
>> 'When a workers compensation statute is plan and unambiguous, this court must give effect to its express language rather than determine what the law should or should not be. The court will not speculate on legislative intent and will not read the statute to add something not readily found in it. If the statutory language is clear, no need exists to resort to statutory construction. *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 608 (2007).'

8

Thus, the issue in this review is not whether claimant's preexisting cervical condition was aggravated by claimant's accident, but rather whether the injury solely aggravated the preexisting condition.

"Recent Board decisions are instructive on the issue. The Appeals Board has found accidental injuries resulting in a new physical finding, or a change in the physical structure of the body, are compensable, despite claimant also having an aggravation of a preexisting condition. These decisions tend to show compensability where there is a demonstrated physical injury above and beyond an aggravation of a preexisting condition." *Cleary*, 2014 WL 1758038, at *6.

The Board in *Cleary* considered six other Board decisions that had interpreted K.S.A. 2011 Supp. 44-508(f)(2) to mean that accidental injuries resulting in a new physical finding, or a change in the physical structure of the body, are compensable despite the claimant also having sustained an aggravation of a preexisting condition. Following those earlier Board decisions, the Board found that the claimant's C6-C7 disk protrusion was a new lesion or change in the physical structure of his body caused by the accident. Because of this finding, the Board determined that the accident did not solely aggravate a preexisting condition and therefore the injury was compensable. Here are the six other Board decisions discussed in *Cleary*.

*Folks v. State*

*Folks v. State*, No. 1,059,278, 2012 WL 4040471 (Kan. Work. Comp. App. Bd. 2012), was also authored by Board member Shufelt. There, the claimant injured his knee while working on a ladder. "I felt my knee pop. . . . I noticed my knee starting to swell." An MRI performed 3 days later revealed a chronic tear of the anterior cruciate ligament and other conditions predating Folks' work accident, including significant osteoarthrosis and osteonecrosis. None of these conditions had been symptomatic before Folks' work accident.

9

Dr. Mark Rasmussen diagnosed Folks as having a chronic ACL tear and degenerative joint disease. Another orthopedist, Dr. Lepse, opined that Folks needed a total right knee replacement. Dr. Edward Prostic testified to Folks' preexisting tears and opined that the work accident "caused additional tearing of his medial meniscus for which in general he would need a partial medial meniscectomy but that it would most likely not give him relief so the total knee replacement authroplasty is claimant's best treatment option." 2012 WL 4040471, at *3. While Dr. Prostic acknowledged that Folks' "osteoarthritis is the greatest factor leading to the total knee replacement recommendation," he testified that the work accident was "the prevailing factor in the need for surgery at this time, but for the preexisting disease he would not need a total knee replacement." 2012 WL 4040471, at *3.

The ALJ found that Folks' meniscus injury arose out of his work injury, which was the prevailing factor in causing his need for a total knee replacement. On appeal to the Board, and after citing K.S.A. 2011 Supp. 44-508(f)(2), the Board affirmed the ALJ and stated:

> "Dr. Prostic, the court ordered independent medical examiner, opined that the accident caused a new tear in claimant's medial meniscus. Consequently, the accident did not solely aggravate, accelerate or exacerbate the preexisting condition in claimant's knee. Moreover, Dr. Prostic concluded that although a torn meniscus is normally treated by a partial medial meniscectomy, in this case because of claimant's preexisting knee condition such treatment would not provide claimant relief and the arthroplasty was the best and appropriate course of treatment. Consequently, Dr. Prostic concluded the December 2011 work injury was the prevailing factor in claimant's need for surgery at this time." 2012 WL 4040471, at *3.

10

*Homan v. U.S.D. #259*

In *Homan v. U.S.D. # 259*, No. 1,058,385, 2012 WL 2061780 (Kan. Work. Comp. App. Bd. 2012), also authored by Board member Shufelt, the claimant had a preexisting but asymptomatic carpal tunnel syndrome at the time of her work-related injury to her wrist. The accident happened in August 2011, after the effective date of the current statutory change. The accident resulted in a tear of the left triangular fibrocartileage and aggravated and rendered symptomatic the claimant's carpal tunnel syndrome. The medical testimony established the claimant's need for medical treatment for both conditions. The Board found K.S.A. 2011 Supp. 44-508(f)(2) inapplicable because the accident did not merely aggravate the preexisting carpal tunnel syndrome but tore a cartilage in the claimant's wrist.

*Macintosh v. Goodyear Tire & Rubber Co.*

In *Macintosh v. Goodyear Tire & Rubber Co.*, No. 1,057,563, 2012 WL 369786 (Kan. Work. Comp. App. Bd. 2012), also authored by Board member Shufelt, the claimant had preexisting disk protrusions at L3-4, L4-5, and L5-S1 that had periodically caused him pain and radiating pain on the left side. His June 2011 work-related injury occurred when he was bounced around while driving a fork lift, causing immediate pain from his low back down his right side. A postaccident MRI disclosed a herniated disk at L5-S1, which affected the right passing nerve root. The Board found that the accident did not solely aggravate a preexisting condition because of this new herniated disk. Thus, the accident did not solely aggravate a preexisting condition. The accident was found to be "the prevailing factor causing the injury, medical condition and resulting disability." 2012 WL 369786, at *1.

11

*Short v. Interstate Brands Corp.*

In *Short v. Interstate Brands Corp.*, No. 1,058,446, 2012 WL 3279502 (Kan. Work. Comp. App. Bd. 2012), also authored by Board member Shufelt, the claimant had a history of surgical reconstructive repair to the anterior cruciate ligament in his right knee and mild osteoarthritic changes. The claimant began to experience pain in that knee over 20 years later in July 2011 while working for respondent as a delivery route driver. The claimant had experienced a new meniscus tear from the repetitive trauma of his delivery work. This was a new finding. Consequently, K.S.A. 2011 Supp. 44-508(f)(2) did not apply because the injury did not solely aggravate, accelerate, or exacerbate a preexisting condition.

*Ragan v. Shawnee County*

In *Ragan v. Shawnee County*, No. 1,059,278, 2012 WL 2061787 (Kan. Work. Comp. App. Bd. 2012), authored by Board member Duncan A. Whittier, the claimant suffered a work-related injury to his left wrist while hauling trash. The injury caused a partial rupture of a ligament in his wrist. In October 2011, the claimant reinjured his wrist at work, resulting in a complete rupture of the tendon in his left wrist. The Board determined the "claimant sustained a change in the physical structure of his wrist," so the limitation of K.S.A. 2011 Supp. 44-508(f)(2) did not apply. 2012 WL 2061787, at *4. The October 2011 accident was the prevailing factor in causing claimant's current injury.

*Gilpin v. Lanier Trucking Co.*

In *Gilpin v. Lanier Trucking Co.*, No. 1,059,754, 2012 WL 6101121 (Kan. Work. Comp. App. Bd. 2012), authored by Board member John F. Carpinelli, the claimant had a preexisting spondylolisthesis, which was rendered symptomatic by the work-related injury in June 2011. The Board determined that the work did not solely render his

preexisting spondylolisthesis symptomatic. Rather, "the structure of claimant's previously asymptomatic spondylolisthesis changed." 2012 WL 6101121, at *4.

The interpretation found in these Board decisions comports with the plain language of the statute, which appears to be intended to exclude liability for an employees' preexisting conditions when the injury is solely an aggravation of the preexisting condition. Further, while *Cleary* and the six Board decisions it cites were on review of a preliminary hearing Order, no subsequent Board Order in any of these cases undermined the holding in any of these cases.

But in the *Cleary* line of cases, the injury from the work accident included concurrent and, at the time, ongoing new injuries along with the aggravated preexisting injuries. In our present case, Le's new injury, the vertebral fracture, according to Dr. Ciccarelli has healed, leaving ongoing Le's preexisting condition of osteoporosis.

But Le continues to experience chronic and debilitating pain. All of the doctors who saw Le believed her pain was real. There is no dispute that the pain prevented Le from doing a day's work. The question is whether the source of this pain is Le's fracture or her preexisting osteoporosis.

Dr. Johnson testified that fractures due to osteoporosis cause chronic pain and that Le's pain was causally related to her work accident. He also opined that Le's pain from her fracture would be the same even if she did not have osteoporosis. According to Dr. Johnson, Le's inability to work is due to her chronic pain.

Dr. Murati also opined that Le's pain was caused by her fracture, not her osteoporosis.

But Dr. Ciccarelli, on whose testimony the Board relied, opined that Le's pain was caused by an aggravation of Le's osteoporosis. He testified that he would expect ongoing pain from a minor vertebral fracture for about a year after the injury. But here Le's fracture was much more significant. And while "a very common complaint of someone with osteoporosis is chronic pain," there is no indication Le suffered from chronic pain before the work accident, though she suffered from severe osteoporosis at the time. Dr. Ciccarelli's opinion of the source of Le's ongoing pain was made 5 months, not a year, after the accident. Further, his 1-year pain projection applied only to minor fractures, which was not the case here. He stated that with advance stage osteoporosis, "a very common complaint of someone with osteoporosis is chronic pain" without evidence of a specific trauma or identifiable fracture. But here, there was a specific trauma and identifiable fracture sustained by Le which can account for her persistent pain, and there is no evidence of chronic pain from undetected traumas before this work accident.

The relevant part of K.S.A. 2011 Supp. 44-508(d) defines an "[a]ccident" as

"an undesigned, sudden and unexpected traumatic event, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. An accident shall be identifiable by time and place of occurrence, produce at the time symptoms of an injury, and occur during a single work shift. The accident must be the prevailing factor in causing the injury."

The Board noted that there was no dispute that Le suffered an accident as defined by this statute.

According to K.S.A. 2011 Supp. 44-510c(a)(2), "[p]ermanent total disability exists when the employee, on account of the injury, has been rendered completely and permanently incapable of engaging in any type of substantial and gainful employment." An "injury" under K.S.A. 2011 Supp. 44-508(f)(1) requires a "lesion or change in the physical structure of the body, causing damage or harm thereto."

14

There is no dispute that Le suffered a vertebral fracture in her work accident. But under K.S.A. 2011 Supp. 44-508(f)(2)(B)(ii), the accident must be "the prevailing factor causing the injury, medical condition, *and resulting disability or impairment*." (Emphasis added.) According to K.S.A. 2011 Supp. 44-508(g), to be the "prevailing factor causing the injury," means to be "the primary factor, in relation to any other factor." Here, the Board determined that the prevailing factor that led to Le's T-10 fracture was her fall at work. But there remained the issue whether Le's fall and the resulting fracture were the prevailing factor causing Le's "resulting disability or impairment" under K.S.A. 2011 Supp. 44-508(f)(2)(B)(ii). The Board resolved this issue against Le, finding that her chronic pain was caused by her preexisting osteoporosis, not the fracture. The Board agreed with Dr. Ciccarelli that osteoporosis was the prevailing factor in the inability of Le to return to work.

We do not substitute our view for that of the Board on issues of credibility. But based on our earlier analysis of Dr. Ciccarelli's testimony, when considering the record as a whole, we cannot conclude that Dr. Ciccarelli's testimony provided substantial evidence to support the Board's decision. Le's osteoporosis was an ongoing condition. She did not suffer from chronic pain before her work accident. Following the accident, she suffered from intractable pain that prevented her from returning to work. It is undisputed that Le's fracture was painful. In her case, the pain became chronic and has never been associated with a post-work-accident trauma. When viewing the record as a whole, the evidence undermines Dr. Ciccarelli's conclusion that Le's ongoing pain which prevents her from working is attributed solely to her preexisting osteoporosis and is not a consequence of the injury she sustained at work. See *Herrera-Gallegos v. H&H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009). There was insufficient evidence to support the Board's conclusion on this point, and we reverse and remand for the Board to reinstate the ALJ's award based upon the finding that Le was permanently and totally disabled.

15

*Future Medical*

Le asserts that the ALJ's award of future medical care should also be reinstated. She argues that the Board erred in limiting her future medical benefits to reasonable and necessary treatment for the T10 fracture to the exclusion of any pain management for her chronic pain.

According to K.S.A. 2011 Supp. 44-510h(a), the employer has the duty "to provide the services of a health care provider . . . as may be reasonably necessary to cure and relieve the employee from the effects of *the injury*." (Emphasis added.)

Based on our finding that Le's chronic pain is part of her compensable injury, we reverse the Board's decision regarding future medical care and reinstate the ALJ's award including future pain management.

Reversed and remanded with directions.

16