NOT DESIGNATED FOR PUBLICATION

No. 118,546

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEITH BENNETT,
*Appellee*,

v.

CITY OF TOPEKA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed July 20, 2018. Reversed.

*Samantha N. Benjamin-House* and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellant.

*Roger D. Fincher*, of Topeka, for appellee.


Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.


PER CURIAM: An injury is not compensable under the Kansas Workers Compensation Act "solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic." K.S.A. 2017 Supp. 44-508(f)(2). The Workers Compensation Board (Board) awarded Keith Bennett permanent partial disability benefits based on a 5% impairment to the body. Yet, there was no evidence of a new physical finding or change in the physical structure of the body that would suggest that his injury was more than an aggravation of his preexisting spondylolisthesis. So the injury is not compensable. For the reasons that follow, we reverse the Board's finding that it was.

1

Bennett worked for the City of Topeka (City). On May 19, 2015, he was assigned to work at Heartland Park in Topeka. There, he drove his Ford F-450 over a wooden pedestrian bridge and it collapsed. The back of Bennett's truck fell to the ground below the bridge and the front end of the truck stayed on the bridge.

After the accident, Bennett felt aching in his lower back as well as pain radiating into his legs. He reported that the pain worsened in the weeks following the accident. He obtained an MRI and was scheduled to receive a spinal epidural injection. However, he did not want the injection because he has a needle phobia. Bennett did attend several sessions of physical therapy and he received electrical stimulations on his back which reduced the pain.

Bennett filed a workers compensation claim alleging that he suffered injury to his lower back and legs as a result of the accident. But, important to this appeal is the fact that this was not Bennett's first workers compensation claim for lower back injury. In 1996, Bennett experienced a lower back injury while working for the City. Dr. Erik Nye found traumatic lumbosacral strain and traumatically aggravated spondylolisthesis at L5-S1. Dr. Nye assigned Bennet a 7% whole body impairment rating. Bennett settled this claim for approximately $9,000. In 2005, Bennett experienced another injury causing lower back pain which radiated into his right leg while working as a trash collector. Dr. Donald Mead inspected Bennett and found minor degenerative changes and some L4-L5 spondylolisthesis. Dr. Mead concluded that Bennett had 5% whole body impairment. Bennett settled this claim for $7,000 plus medical expenses incurred prior to the settlement. Bennett also settled a claim for a 2009 injury to his right shoulder.

During his deposition, the City asked Bennett if he had ever had workers compensation injuries in the past. He replied that he had rotator cuff surgery while

working for Shawnee County Refuse. He settled the claim for 8% impairment to his shoulder. He denied having any other workers compensation settlements. Two of the three doctors who evaluated Bennett, Dr. Daniel D. Zimmerman and Dr. Theodore D. Koreckij, were unaware of Bennett's prior back injuries and settlements. Dr. John H. Gilbert was aware of the 1996 injury, but not the 2005 injury.

The administrative law judge (ALJ) ordered Bennett to receive an independent medical evaluation from Dr. Gilbert. After viewing Bennett's x-rays and MRI, Dr. Gilbert concluded that Bennett had spondylolisthesis at L4-L5 with stenosis and degenerative disc disease at L5-S1—the same location as the impairment findings in his prior worker's compensation settlements. Dr. Gilbert thought that the May 2015 accident caused Bennett to experience an acute lumbar strain. Dr. Gilbert's interrogatory asked him to evaluate Bennett using the 4th edition of the American Medical Association Guides (AMA Guides). Using these guides, he calculated that Bennett had a 25% impairment to the body as a whole. However, he attributed only 5% of the impairment to Bennett's May 2015 accident. Dr. Gilbert did not think that the May 2015 accident was the prevailing factor causing Bennett's condition. Rather, he thought that Bennett's reported symptoms represented an exacerbation or aggravation of his preexisting degenerative disc disease.

Dr. Zimmerman evaluated Bennett at the request of Bennett's attorney. Dr. Zimmerman noted preexisting spondylolisthesis at L4-L5 causing degenerative changes in Bennett's lower spine. He opined that the May 2015 accident caused symptomatic spinal stenosis at L4-L5 and L5-S1—again the same location as his previous worker's compensation claim settlements. The stenosis placed pressure on Bennett's nerve roots at multiple levels and caused "sensory symptoms and motor dysfunction in both lower extremities." Dr. Zimmerman concluded that the prevailing factor in Bennett's current symptoms was the symptomatic spinal stenosis that developed after the May 2015 accident. Using the 6th Edition of the AMA Guides, Dr. Zimmerman calculated that Bennett had a 14% impairment to his body as a whole. Dr. Zimmerman was not aware of

3

Bennett's prior injuries, and he did not account for them in providing his impairment rating.

Dr. Koreckij evaluated Bennett on behalf of the City. He assessed Bennett with L4-L5 degenerative spondylolisthesis and L5-S1 spondylolysis with severe degenerative disc disease. In his deposition, Dr. Koreckij explained that his findings were consistent with a degenerative disease and that they were not something he would see as the result of an injury. He concluded that Bennett's symptoms presented an exacerbation of an underlying disease, as the issues at L4-L5 and L5-S1 "were all without a doubt pre-existing conditions." He thought the accident may have hastened the onset of pain, but that "the ultimate need for treatment is related to the preexistent disease process." He believed that the nerve impingement causing the pain was already impinged before the accident. He could not explain why the nerve impingement did not cause pain before the accident. Dr. Koreckij did not think that Bennett's workplace injury caused permanent partial impairment, rating him at zero.

The ALJ found that the workplace accident left Bennett with a new injury, narrowing of the spinal cord, and that this injury was above and beyond aggravation of Bennett's preexisting condition. The ALJ found Dr. Zimmerman's 14% overall impairment more compelling than Dr. Koreckij's 0%. In determining how much of the 14% impairment was attributable to the new injury, the ALJ relied on Dr. Gilbert's conclusion that only one-fifth of Bennett's current work-related injuries were attributable to the overall permanent impairment. One-fifth of 14% is 2.8%. The ALJ did not use Dr. Gilbert's report in calculating the degree of impairment because Dr. Gilbert relied on the 4th edition of the AMA Guidelines. The ALJ relied on Dr. Gilbert and Dr. Koreckij's conclusions that the prevailing factor in Bennett's injury was not the workplace accident. Bennett did not disclose his prior back problems to Dr. Zimmerman, so Dr. Zimmerman's conclusion that the workplace accident was the prevailing factor in Bennett's injury was

based on incomplete evidence. Because the ALJ found that Bennett's current injures were not the prevailing factor for his medical treatment needs, he denied Bennett's claim.

Bennett filed for review by the Board. Disagreeing with the ALJ, the Board found that the workplace accident was the prevailing factor causing Bennett's injury. The Board acknowledged that Bennett likely had a degenerative condition before the workplace accident. However, it noted that Dr. Zimmerman's opinion was the most persuasive on this point given that the circumstances surrounding Bennett's accident and the painless condition of his lower back and lower extremities in the years preceding the accident. The Board awarded Bennett permanent partial disability benefits based on a 5% impairment to the body. The Board reasoned that Dr. Zimmerman testified that he only attributed 5% impairment to the workplace accident. It noted that while Dr. Gilbert relied on the 4th edition of the AMA Guides, his rating was the same as Dr. Zimmerman's. It held that Dr. Koreckij's 0% impairment rating was "unpersuasive in view of the serious objective manifestations of [Bennett's] injury."

The City filed a petition for review.

ANALYSIS

*There was insufficient evidence for the Board to conclude that Bennett's injury is compensable under K.S.A. 2017 Supp. 44-508(f)(2).*

The City argues that Bennett's injury is not compensable under K.S.A. 2017 Supp. 44-508(f)(2) because the injury was solely an aggravation, exacerbation, or acceleration of his preexisting condition, or because the injury rendered his preexisting condition symptomatic.

5

An appellate court reviews a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported to the appropriate standard of proof by substantial evidence. See K.S.A. 2017 Supp. 77-621(c)(7). "This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings." *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). The court does not reweigh the evidence or engage in de novo review. 299 Kan. at 795.

Under Kansas' Workers Compensation Act, employers are liable to pay compensation to employees if "an employee suffers personal injury by accident, repetitive trauma or occupational disease arising out of and in the course of employment." K.S.A. 2017 Supp. 44-501b(b). An "injury" means "any lesion or change in the physical structure of the body, causing damage and harm thereto." K.S.A. 2017 Supp. 44-508(f)(1). "An injury is not compensable solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic." K.S.A. 2017 Supp. 44-508(f)(2). However, "accidental injuries resulting in a new physical finding, or a change in the physical structure of the body, are compensable despite the claimant also having sustained an aggravation of a preexisting condition." *Le v. Armour Eckrich Meats*, 52 Kan. App. 2d 189, Syl. ¶ 5, 364 P.3d 571 (2015).

The Board relied heavily on Dr. Zimmerman's report in deciding this issue. It held that the May 2015 accident caused a new injury—narrowing of the spinal cord—that went beyond an aggravation of Bennett's preexisting condition.

Dr. Zimmerman's testimony during his deposition contradicts the Board's finding on this issue. Dr. Zimmerman acknowledged that Bennett had an underlying degenerative disc disease. The MRI he examined showed "mild spinal canal stenosis at L4-L5 owing

6

to what was characterized as combined disc and facet degenerative change." Dr. Zimmerman never reported that the May 2015 accident caused a new spinal stenosis. Rather, he testified that the accident caused the stenosis, which existed due to Bennett's preexisting degenerative disc disease, to become symptomatic. This is problematic because injuries which render a preexisting condition symptomatic are not compensable. K.S.A. 2017 Supp. 44-508(f)(2). Thus, while Dr. Zimmerman did state that there was an injury, it was not a compensable injury for the purposes of workers compensation because it merely rendered Bennett's preexisting condition symptomatic.

Bennett's medical history supports the idea that Bennett's symptoms were caused by his degenerative disc disease, and that the stenosis was merely rendered symptomatic by the May 2015 accident. Bennett's prior workers compensation claims established that he had previously experienced symptomatic spondylolisthesis at L4-L5 and L5-S1. The first time he was injured at work, the injury aggravated spondylolisthesis at L5-S1 and caused back pain. The second time, the injury aggravated spondylolisthesis at L4-L5 and caused back and right leg pain. It is consistent with Bennett's medical history to find that the May 2015 accident did not cause a new injury, but rather rendered his preexisting condition symptomatic.

The findings of both Dr. Gilbert and Dr. Koreckij also refute the Board's conclusion on this issue. Both doctors found that Bennett's symptoms were an exacerbation or aggravation of Bennett's preexisting spondylolysis and spinal stenosis. While this court cannot reweigh evidence, it must review the evidence both supporting and contradicting the Board's findings. *Williams*, 299 Kan. at 795. Without Dr. Zimmerman's conclusion, there is no evidence to support the Board's findings.

Bennett argues that the fact that his asymptomatic preexisting condition was rendered symptomatic is evidence that the accident caused a change in the physical structure of his body constituting an injury. He cites *Gilpin v. Lanier Trucking Co.*,

7

No. 1,059,754, 2012 WL 6101121 (Kan. Work. Comp. App. Bd. 2012), in support of his argument. There, the "claimant had preexisting, yet asymptomatic, spondylolisthesis at L4-5" prior to a workplace accident. 2012 WL 6101121, at *1. After the accident, the claimant's spondylolisthesis was rendered unstable and caused the claimant lower back pain and pain in his legs. The Board held that the fact that the preexisting, stable spondylolisthesis was rendered unstable and symptomatic constituted a physical change. 2012 WL 6101121, at *4. Bennett argues that the same thing occurred here—his preexisting, stable spondylolisthesis was rendered unstable by the May 2015 accident. He asks this court to find that "unstable spondylolisthesis qualifies as a 'change in the physical structure' of [his] body."

"The Board's interpretation of the law is entitled to judicial deference if there is a rational basis for the Board's interpretation. However, the Board's interpretation is not conclusive and, though persuasive, is not binding on this court." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 521, 154 P.3d 494 (2007). The problem with the Board's opinion in *Gilpin* is that the only reason the Board found that the claimant's preexisting condition had been rendered unstable was because it was symptomatic. The Board basically used the terms "unstable" and "symptomatic" synonymously. There was no evidence of a new physical finding or a change in the physical structure of the claimant's condition. In *Krueger v. Kwik Shop, Inc.*, No. 113,418, 2016 WL 852938, at * 5 (Kan. App. 2016) (unpublished opinion), the Board came to a conclusion different than the *Gilpin* Board, stating: "'Not all pain arises from a change in physical structure. Because an asymptomatic preexisting condition becomes symptomatic does not necessarily mean there was a change in physical structure.'" A panel of this court agreed. 2016 WL 852938, at *1.

Finally, it is the claimant's burden "to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends." K.S.A. 2017 Supp. 44-501b(c). In many preexisting condition workers compensation

cases, claimants prove that there is a new injury by providing evidence of pre- and post-accident MRIs. For example, in *Allen v. Cleary Building Corp.*, No. 1,063,145, 2014 WL 1758038, at *7 (Kan. Work. Comp. App. Bd. 2014), a comparison of the claimant's pre- and post-accident medical records showed a new disk protrusion at C6-C7 that was not present in pre-accident MRIs. Accordingly, the Board found that "[t]he C6-C7 disk protrusion is a new lesion or change in the physical structure of claimant's body caused by the accident." 2014 WL 1758038, at *7; see also *Krueger*, 2016 WL 852938, at *6 (finding that, although claimant experienced intense back and leg pain following a workplace accident, a comparison of her pre- and post-accident MRIs did not provide conclusive evidence of a change in physical structure); *Macintosh v. Goodyear Tire & Rubber Co.*, No. 1,057,563, 2012 WL 369786, at *5 (Kan. Work. Comp. App. Bd. 2012) (finding that claimant suffered an injury to his lower back because, although claimant had a history of lower back injuries, a comparison of his pre- and post-accident MRIs showed a new herniated disk at L5-S1). Bennett was a poor historian, failing to inform the doctors who evaluated him about his prior injuries. If he had provided medical records of his prior injuries, he may have been able to show that the May 2015 accident created a new physical finding. However, he failed to carry his burden on this issue.

The Board's finding that there was a new stenosis is not supported by substantial competent evidence. The evidence, including Dr. Zimmerman's testimony, shows that the May 2015 accident rendered a preexisting stenosis symptomatic. Therefore, the injury is not compensable under the Kansas Workers Compensation Act.

*Substantial competent evidence does not support the Board's finding that Bennett's work accident was the prevailing factor in causing his injury, medical condition, and resulting disability or impairment.*

The City also argues that substantial evidence does not support the Board's finding that Bennett's workplace accident was the prevailing factor causing his injury, medical

condition, and resulting disability or impairment. The City argues that Dr. Zimmerman's conclusion, which the Board relied upon, was based on incomplete evidence as Dr. Zimmerman had no knowledge of Bennett's prior back injuries.

An appellate court reviews a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported to the appropriate standard of proof by substantial evidence. See K.S.A. 2017 Supp. 77-621(c)(7). "This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings." *Williams*, 299 Kan. at 795. The court does not reweigh the evidence or engage in de novo review. 299 Kan. at 795.

In order to recover for an injury caused by a workplace accident under the Kansas Workers Compensation Act, an employee must show that "the accident is the prevailing factor causing the injury, medical condition, and resulting disability or impairment." K.S.A. 2017 Supp. 44-508(f)(2)(B)(ii). "'Prevailing' as it relates to the term 'factor' means the primary factor, in relation to any other factor." K.S.A. 2017 Supp. 44-508(g). The prevailing factor test is "especially relevant when an employee suffered a work accident but also had some preexisting condition." *Buchanan v. JM Staffing*, 52 Kan. App. 2d 943, 949, 379 P.3d 428 (2016). "An employee can only recover if the accident, and not the preexisting condition, was the primary cause of injury." 52 Kan. App. 2d at 949.

Here, only Dr. Zimmerman thought that the May 2015 accident was the prevailing factor causing the injury, medical condition, and resulting impairment. While Dr. Zimmerman noted that some of Bennett's pain was caused by preexisting spondylolisthesis, he thought the prevailing factor in Bennett's current condition was spinal stenosis of L4-L5 and L5-S1 caused by the May 2015 accident. However, as discussed above the stenosis predated the accident—the accident merely made it

10

symptomatic. Neither Dr. Gilbert nor Dr. Koreckij thought the May 2015 accident was the prevailing factor causing the injury, medical condition, and resulting impairment.

Bennett's injury and need for treatment stems from his degenerative disc disease. This disease predated the accident, and thus the accident cannot be considered the prevailing factor causing his injury, medical condition, and resulting disability or impairment. The Board's contrary holding is not supported by substantial evidence.

In sum, we reverse the decision of the Board and find that Bennett's injury was not compensable under the Kansas Workers Compensation Act. We need not address his final issue regarding the Board's impairment rating.

Reversed.