NOT DESIGNATED FOR PUBLICATION

No. 128,612

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARK CRAWFORD,
*Appellant*,

v.

SPIRIT AEROSYSTEMS, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Oral argument held February 10, 2026. Opinion filed March 27, 2026. Affirmed.

*Jeff K. Cooper*, of Topeka, for appellant.

*Vince A. Burnett* and *Pamela C. Parker*, of McDonald Tinker PA, of Wichita, for appellee.

Before PICKERING, P.J., CLINE, J., and CAREY L. HIPP, District Judge, assigned.

CLINE, J.: Mark Crawford appeals the Workers Compensation Board's denial of workers compensation benefits for his cervical spine injuries and associated medical expenses. The Board found Crawford failed to show his repetitive job duties were the prevailing factor causing his injuries. After reviewing the record, we find substantial evidence supports the Board's finding and therefore affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Crawford worked at Spirit Aerosystems, Inc. between February 22, 2014, and August 2021. He started as a sheet metal fabricator before moving to the frame shop. In the frame shop, Crawford's job duties included drilling, riveting, and flipping two 25-pound frames at a time.

Sometime before Christmas break in 2020, Crawford started feeling pain in his neck. At first, he thought he had slept wrong. He claims he reported his pain to Spirit, but the company did not send him to a doctor. Instead, Crawford went to see his primary care physician, Dr. Ronald Reichenberger, on his own accord. Dr. Reichenberger gave him a light duty slip dated January 22, 2021. Dr. Reichenberger also referred him to Dr. Theo Mellion at the Abay Neuroscience Center for an MRI. Dr. Mellion noted the MRI revealed degenerative changes through his cervical spine with some recess narrowing. He recommended physical therapy and possibly epidural injections. Dr. Mellion offered to see Crawford again after this treatment, but it does not appear that Crawford returned.

In February 2021, Crawford applied for workers compensation benefits for injuries to his cervical spine caused by repetitively lifting heavy parts. Crawford's attorney referred him to Dr. Pedro Murati in March 2021, whom Crawford had seen in 2008 for a different workers compensation claim after Crawford fell on ice outside an Arby's. At that time, Dr. Murati diagnosed Crawford with myofascial pain affecting both shoulders and assigned him permanent restrictions on lifting and pushing over 20 pounds and a 5% whole person impairment rating. This time, Dr. Murati diagnosed Crawford with myofascial pain syndrome and impingement of the right shoulder, along with cervical polyradiculopathy. Dr. Murati attributed Crawford's injury to his "multiple repetitive traumas at work." Dr. Murati noted that Crawford reported he was completely asymptomatic before this "incident" and Dr. Murati was unaware of Crawford having a neck condition before "the accident in question."

2

In April 2021, Spirit sent Crawford to Dr. Chris Fevurly for an evaluation. Dr. Fevurly reviewed Crawford's medical history and performed a physical examination. Dr. Fevurly noted that Crawford's MRI revealed degenerative and arthritic changes throughout Crawford's cervical spine. In his opinion, the prevailing problem was Crawford's age (66 years) and his smoking history. Dr. Fevurly did not believe Crawford's work activities were the prevailing factor for the MRI findings or Crawford's clinical condition.

In May 2021, the Workers Compensation Court appointed Dr. Terrance Pratt as a neutral physician to do an independent medical examination. Dr. Pratt met with Crawford to discuss his medical history and present condition. Dr. Pratt also reviewed records of Crawford's past medical history, which included several medical events pertaining to his cervical spine:

- In 1999, Crawford injured his lower back while riding a roller coaster at Worlds of Fun. An MRI revealed three bulging discs. After Crawford received two cervical epidural injections, his symptoms resolved.
- In 2008, Crawford slipped on ice and fell while leaving his job at Arby's. He landed on his upper back, causing numbness and tingling in his right arm, as well as pain and stiffness in his neck with muscle spasms and tightness in his upper back. He was diagnosed with thoracic contusion and strain and, later, both thoracic and cervical derangement syndrome.
- In September 2017, Crawford returned to his primary care physician noting "posterior neck pain more on the left side" and "down the arm." He was diagnosed with cervicalgia and prescribed muscle relaxants and pain relievers.
- In 2018, Crawford experienced pain in his neck that he reported to Spirit. Since Crawford believed this pain resulted from constantly operating a drill press, the company moved him to a different shop.

After reviewing Crawford's medical records and examining him, Dr. Pratt ultimately determined he could not state with a reasonable degree of medical certainty that Crawford's "multilevel discogenic changes" related to his work activities. As for Crawford's complaints of pain in his right shoulder, Dr. Pratt ordered an MRI. Then after reviewing the MRI results, he attributed Crawford's complaints to a preexisting degenerative joint disease rather than his work activities.

Crawford's primary care physician referred him to Dr. John Dickerson in November 2021. Dr. Dickerson reviewed Crawford's 2021 MRI and determined he had a herniated disc. Dr. Dickerson first recommended an epidural injection paired with physical therapy to see if that would improve Crawford's condition. But when Crawford's pain complaints continued, Dr. Dickerson recommended surgery, which ended up being a C3 to C7 anterior cervical discectomy and fusion.

Based on his observations, Dr. Dickerson concluded Crawford had physical spinal changes that he believed were causally related to the work injury described by Crawford. In addition, Dr. Dickerson opined that the work injury was the prevailing factor in Crawford's injury. Dr. Dickerson did not review Crawford's prior medical records but, instead, based his opinion on Crawford's subjective history and report that his pain started at the time of his "new injury" in December 2020.

*Administrative Law Judge Findings*

The administrative law judge (ALJ) considered all four physicians' opinions and determined, after reviewing Crawford's medical records and testimony, that Dr. Pratt's opinions were the most credible. And the ALJ found that Dr. Dickerson's failure to review any of Crawford's prior medical records and reliance on Crawford's representations about when his pain began seriously undermined the credibility of Dr. Dickerson's opinions. Furthermore, while Dr. Dickerson claimed Crawford had a

herniated disc—indicating a more acute injury—the ALJ was not persuaded because Crawford initially believed he had merely slept wrong and there was no specific incident that would explain the herniated disc. The ALJ determined Crawford was not entitled to workers compensation benefits because Crawford did not satisfy his burden to show his repetitive job duties were the prevailing factor causing his cervical spine injuries and need for medical treatment.

Crawford applied for review by the Board, who affirmed the ALJ's decision.

REVIEW OF CRAWFORD'S APPELLATE CHALLENGES

*Did the Board err in finding that Crawford did not meet his burden of proving that his job duties caused a repetitive trauma that was the prevailing factor in the injury to his cervical spine and shoulder?*

Crawford contends the Board's decision is unsupported by substantial evidence because he claims Dr. Pratt's opinions, which the Board relied on, are unsupported by the facts and undermined by Dr. Dickerson's opinions. Instead, Crawford contends the Board should have relied on Dr. Dickerson's opinions, since he performed Crawford's surgery.

*Standard of Review*

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs this court's review of cases arising under the Workers Compensation Act, K.S.A. 44-501 et seq. K.S.A. 44-556(a). We review a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported to the appropriate standard of proof by substantial evidence. See K.S.A. 77-621(c)(7). "Substantial evidence" refers to "'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.'" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015).

5

Under the KJRA, reviewing the Board's factual findings in light of the record as a whole means:

> "[T]he adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 77-621(d).

On appeal, the burden of proving the invalidity of the agency action rests on the party asserting the invalidity. K.S.A. 77-621(a)(1); *EagleMed, LLC v. Travelers Insurance*, 315 Kan. 411, 419, 509 P.3d 471 (2022) (workers compensation).

> "'Burden of proof' means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record unless a higher burden of proof is specifically required by this act." K.S.A. 44-508(h).

Crawford had the burden of proof to demonstrate that he suffered repetitive trauma at his work, between December 2020 and January 2021, which caused his injury. K.S.A. 44-501b(c); see *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015) ("At a hearing before the Board, a claimant has the burden of proving his or her right to compensation.").

> "'Repetitive trauma' refers to cases where an injury occurs as a result of repetitive use, cumulative traumas or microtraumas. The repetitive nature of the injury must be demonstrated by diagnostic or clinical tests. The repetitive trauma must be the prevailing

6

factor in causing the injury. 'Repetitive trauma' shall in no case be construed to include occupational disease, as defined in K.S.A. 44-5a01, and amendments thereto." K.S.A. 44-508(e).

The repetitive trauma must also be found to be the prevailing factor in causing his injuries.

> "[f](2) An injury is compensable only if it arises out of and in the course of employment. An injury is not compensable because work was a triggering or precipitating factor. An injury is not compensable solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic.
>
> (A) An injury by repetitive trauma shall be deemed to arise out of employment only if:
>
> (i) The employment exposed the worker to an increased risk or hazard to which the worker would not have been exposed in normal non-employment life;
>
> (ii) the increased risk or hazard to which the employment exposed the worker is the prevailing factor in causing the repetitive trauma; and
>
> (iii) the repetitive trauma is the prevailing factor in causing both the medical condition and resulting disability or impairment.
>
> . . . .
>
> "(g) 'Prevailing' as it relates to the term 'factor' means the primary factor, in relation to any other factor. In determining what constitutes the 'prevailing factor' in a given case, the administrative law judge shall consider all relevant evidence submitted by the parties." K.S.A. 44-508(f)(2), (g).

Crawford therefore must show that his work duties did not merely aggravate an existing condition but were the primary factor in causing his injuries. However, "'accidental injuries resulting in a new physical finding, or a change in the physical structure of the body, are compensable, despite claimant also having an aggravation of a preexisting condition.'" *Le v. Armour Eckrich Meats*, 52 Kan. App. 2d 189, 195, 364 P.3d 571 (2015). The decisions in these situations tend "'to show compensability where there

7

is a demonstrated physical injury above and beyond an aggravation of a preexisting condition.'" 52 Kan. App. 2d at 195.

*Substantial evidence supports the Board's decision.*

Crawford first claims that Dr. Pratt's reliance on the reports of Dr. Murati and Dr. Sandra Barrett from 2008, and Dr. Reichenberger's between 2016 and 2021, are insufficient to support his opinions on Crawford's preexisting condition. Instead, he asserts that Dr. Pratt also needed to review MRI scans from before the incident. Crawford claims without looking at an MRI from before December 2020—the onset of Crawford's newly claimed injuries—that Dr. Pratt had insufficient information on which to base his opinion that Crawford's work duties were not the prevailing factor for his injuries.

The first problem with Crawford's position is he is asking us to reweigh the credibility of Dr. Pratt's opinions, which we cannot do. See *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

The next problem is that Dr. Pratt noted in his report that he relied on Crawford's disclosure of his 1999 injury and the fact that an MRI was done which revealed "disc bulging." Indeed, Crawford admitted to this in his testimony at the hearing. So Dr. Pratt did not ignore the findings from Crawford's 1999 MRI in reaching his opinions.

Crawford asserts that the incidents before 2020 were isolated issues which were different and all resolved before this injury. And he claims Dr. Pratt discounted that he returned to work with no problems after each incident. But, again, Crawford is asking us to reweigh evidence and he mischaracterizes the facts Dr. Pratt considered and the basis for his opinion. When recounting Crawford's injuries over the years, Dr. Pratt noted the medical treatment Crawford received each time as well as the fact that Crawford's symptoms resolved. But Dr. Pratt also noted that Crawford "report[ed] similar symptoms

8

in 2016 and 2018" to the current symptoms and in 1999 he reported "cervical involvement to the degree that MRI and 2 cervical epidural injections occurred." And because of that "prior symptomatic involvement," Dr. Pratt believed Crawford experienced a "triggering or aggravation of his pre-existing structural changes" from his work activities in December 2020 through January 2021.

Moreover, while Crawford highlights that after his injuries in 2008, Dr. Barrett indicated Crawford had 0% impairment—contending this means he had no lasting issues—this assessment undermines Dr. Murati's credibility. Because in 2008, Dr. Murati imposed a 5% full body impairment with permanent restrictions after he examined Crawford for the same injuries. And while Crawford now claims he worked from 2017 through 2021 "without any complaints or additional treatment records," he testified in the hearing before the ALJ that he had pain in his neck in 2018 or 2019 while working a drill press. He said he reported it to Spirit, and they changed his job from working the drill press to the frame shop.

Crawford next cites *Macintosh v. Goodyear Tire & Rubber Co.*, No. 1,057,563, 2012 WL 369786, at *5 (Kan. Work. Comp. App. Bd. January 31, 2012), to highlight that even when there are preexisting conditions affecting the same region of the body, this does not necessarily mean the claimed injury was solely aggravation of a preexisting condition. Robert Macintosh had an MRI performed in 2009 that revealed mild posterior disc bulge of the L5-S1, and following his 2011 accident, his MRI revealed a herniated disc at L5-S1 attributable to a jolt while operating a forklift. Like Macintosh, Crawford notes he had repeated MRI's of the same region; and according to Dr. Dickerson, Crawford suffered a herniated disc that could signal workplace injury. Even so, Dr. Dickerson acknowledged he was unaware that Crawford had prior neck issues and he relied on Crawford's statements about when his symptoms began. Dr. Dickerson also admitted he did not review any prior medical records, including the record of Dr. Pratt's evaluation.

9

Lastly, Crawford asserts that Dr. Pratt's opinions were not based on the correct burden of proof. He claims the Board found Pratt's opinion "problematic" in another case because Dr. Pratt did not say that claimant's injuries were not caused by her work activities. *Staples v. Allstate Ins. Co.*, No. 1,072,334, 2017 WL 5126031, at *6 (Kan. Work. Comp. App. Bd. October 27, 2017). And, here, Dr. Pratt did not affirmatively state Crawford's work injuries were not caused by his work activities. Dr. Pratt said he could not "state to a reasonable degree of medical certainty that the multilevel discogenic changes identified on the cervical imaging relate to [Crawford's] vocationally related activities in December 2020 until January 2021." Instead, he opined Crawford suffered a "triggering or aggravation of his pre-existing structural changes." But, on appeal in *Staples*, this court said that the Board's use of the term "problematic" referred to the credibility of Dr. Pratt's opinions in that case. That is, the Board was more persuaded by other experts in that case and made a factual finding that Dr. Pratt was less persuasive. It did not make a legal determination that his opinion did not meet the requisite burden of proof. *Staples v. Allstate Ins. Co.*, No. 118,616, 2018 WL 4263356, at *6 (Kan. App. 2018) (unpublished opinion).

Here, the ALJ noted all four physicians' opinions, and determined after reviewing the record as a whole, including Crawford's medical records and testimony, that Dr. Pratt's opinions were the most credible. The ALJ found that Dr. Dickerson's failure to review any of Crawford's prior medical records seriously undermined the credibility of his opinions. Additionally, Dr. Dickerson acknowledged that he "was just going by what [Crawford] said and that his symptoms began when he was injured."

On appeal, the Board affirmed the finding that Dr. Dickerson's opinions were not credible because he did not "evaluate and compare Claimant's prior medical records . . . did not review any outside medical records documenting Claimant's preexisting cervical condition . . . [and] relied on Claimant's assertion the pain started at the time of the new

10

injury." On the other hand, Dr. Pratt was found to be "more persuasive because he had an accurate understanding of Claimant's prior condition."

Furthermore, while Dickerson claimed that there was a herniated disc indicating a more acute injury, the court was not persuaded because Crawford initially believed he had merely slept wrong and there was no specific incident that would explain the herniated disc. Crawford does not address any of these determinations on appeal, which undercut the credibility of Dr. Dickerson's opinions. Rather he simply focuses on the fact that Dr. Dickerson performed the surgery and believed, based on his personal observations and Crawford's statements, that Crawford's injuries were caused by his work duties.

That said, Crawford does correctly highlight that both the ALJ and the Board incorrectly asserted that Dr. Reichenberger treated him for right arm pain between 2016 and 2018. In fact, he was treated for cervical pain traveling down the left arm during these years. At any rate, this does not appear to be significant considering Crawford's ultimate diagnoses consisted of bilateral polyradiculopathy and bilateral foraminal narrowing, with the April 7, 2021 MRI report also identifying more severe degeneration in the left side. Nor does it detract from the medical evidence and Crawford's own testimony that Crawford received medical treatment and experienced pain in his neck in the past.

Because the Board considered all the evidence presented—not just Dr. Pratt's opinions—and this court does not reweigh the evidence or pass on the credibility of the witnesses, we find the Board did not err in reaching its conclusion that Crawford is not entitled to workers compensation benefits.

Crawford also argues, seemingly in the event we reverse the Board's determination, that we should find he is permanently and totally disabled and entitled to

workers compensation benefits for future medical treatment. But since we are affirming the Board's determination on whether Crawford is entitled to workers compensation benefits at all, we need not address these issues.

CONCLUSION

Substantial evidence supports the ALJ's and Board's determination that Crawford failed to meet his burden of proof that his injury by alleged repetitive trauma from his work duties between December 1, 2020, through January 22, 2021, was the prevailing factor causing his cervical spine and shoulder conditions.

Affirmed.