NOT DESIGNATED FOR PUBLICATION

No. 121,024

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARIA L. MUNOZ,
*Appellant/Cross-Appellee*,

v.

SOUTHWEST MEDICAL CENTER
and
KANSAS HEALTH SERVICE CORP.,
*Appellees/Cross-Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed March 20, 2020. Affirmed.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant/cross-appellee.

*Shirla R. McQueen*, of Sharp McQueen, P.A., of Liberal, for appellees/cross-appellants.

Before MALONE, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: Maria L. Munoz appeals the Kansas Workers Compensation Appeals Board's (Board) order affirming the administrative law judge's (ALJ) decision to award her five percent permanent partial general disability for an impairment in her lumbosacral region. Munoz claims the Board failed to consider all of the injuries she suffered from the fall, including her low back pain with left lower extremity type symptoms, in determining her permanent partial general disability. Southwest Medical Center and its insurance carrier, Kansas Health Service Corporation (SWMC), cross-appeal, arguing the Board erred when it found there was a causal connection between the conditions under which Munoz' work was required to be performed and the resulting

1

accident. Having reviewed the record, we find substantial evidence supports the Board's order. We affirm.

FACTS

Munoz worked for SWMC as a food service employee. Her position required preparing and delivering food to patients. On July 30, 2013, Munoz fell and sustained injury after she left a food cart with another SWMC employee. In October 2013, Munoz applied for workers compensation benefits for "back, waist, right knee, left arm, and neck" injuries she sustained when she "twisted, tripped and fell."

Munoz gave her deposition testimony with the assistance of a Spanish-language interpreter. On the day of the accident, Munoz began pushing a cart containing several trays of food to deliver to patients. On her way, she saw two SWMC employees, Pam Toney and Maria Hernandez, in the elevator. Toney offered to deliver the food for Munoz, so Munoz pushed the cart into the elevator. About midway down the hall, Munoz caught her foot on the floor for an unknown reason, causing her to lose control and fall. She landed on her left elbow and right knee. While lying on the floor, Munoz experienced pain in her knees, elbows, and lower back.

Several years later, in October 2017, Munoz testified at the regular hearing before the ALJ and controverted some of the testimony she gave in her earlier deposition. Munoz said she stepped inside the elevator to give the food cart to Toney. When she took a single step out of the elevator, her shoe "stopped," and she lost control on a surface like linoleum. On cross-examination, Munoz clarified her shoe got stuck because of "wax" on the floor.

According to Toney's deposition testimony, Munoz gave her a single food tray to deliver, not a food cart. Toney was inside the elevator facing the hallway when Munoz

2

handed her the tray. When the elevator door closed, Toney heard a "thump" coming from the hallway. Hernandez and Toney opened the elevator door and saw Munoz lying on her back about 10 to 15 steps from the elevator. Toney did not see any substance on the floor that could have caused Munoz to fall. Hernandez testified she saw Munoz "catch her foot" as the elevator door was closing. According to Hernandez, Munoz fell about 10 feet from the elevator. Two other SWMC employees, Tonia Comer and Edward Stevenson, arrived at the scene after the accident and asked Munoz how she had fallen. In their deposition testimony, both Comer and Stevenson testified Munoz had told them she did not know what caused her to fall.

Munoz was seen by several doctors and eventually had surgery in June 2014. She took six months off before returning to work.

About a year before the accident, Munoz saw Dr. William R. Valdez for mid-back pain that radiated down her left leg. Dr. Valdez ordered an MRI in September 2012. The MRI showed "desiccated discs at all levels with degenerative change and small osteophyte formation."

In February 2013, Munoz saw Dr. Ian S. Kovach for her low back pain. Munoz told Dr. Kovach she had been experiencing low back pain for at least five months. He reviewed the MRI from September 2012 and noted slight disc desiccation with degenerative levels throughout the lower lumbar region. He recommended physical therapy and told Munoz if her symptoms did not improve he would refer her to an orthopedic spine physician.

A second MRI was ordered in September 2013. The MRI indicated bilateral spondylolysis at the L5-S1 level without evidence of spondylolisthesis.

3

Several months after the accident, in December 2013, Munoz saw Dr. Chris S. Lothes, a spinal surgeon, for pain in her low back and right kneecap. Munoz told Dr. Lothes her physical therapy sessions had not improved her pain. Dr. Lothes determined Munoz' low back pain might be related to spondylolysis at the L5-S1 level. He recommended physical therapy and epidural injections.

Munoz saw Dr. Lothes again in January 2014. Munoz' back pain had not improved from the physical therapy and injections. Dr. Lothes determined Munoz' low back pain at the L5-S1 level stemmed from her pars defects and recommended surgery. Dr. Lothes performed surgery on Munoz to stabilize the L5-S1 level and to lessen her low back pain.

In August 2015, Dr. George G. Fluter examined Munoz at the request of Munoz' counsel. He reviewed Munoz' medical history and examined her in person. According to his deposition testimony, there was no clear indication from Munoz' medical records she had ongoing problems affecting her back pain from September 2012 until the date of the accident. Dr. Fluter opined the September 2013 MRI—taken after the accident—showed bilateral spondylolysis at the L5-S1 level without evidence of spondylolisthesis. Dr. Fluter found these conditions were not present in his pre-accident MRI, indicating a structural change in Munoz' lumbar spine occurred after the accident. According to Dr. Fluter, the most likely cause for that structural change was Munoz' work accident. He concluded the prevailing factor causing Munoz' present impairment was her work accident.

After reviewing Munoz' medical record and examining her, Dr. Fluter determined Munoz had sustained a 22 percent whole body impairment under the Fourth Edition of the American Medical Association (AMA) Guides and attributed 20 percent of that impairment to her lumbosacral condition.

4

In January 2016, Dr. Vito Carabetta examined Munoz at the request of SWMC's counsel; he reviewed Munoz' medical history and examined Munoz in person. Dr. Carabetta testified in his deposition Munoz showed inconsistency in the straight-leg-raising test when he examined her. He concluded Munoz was either consciously or unconsciously trying to manipulate the examination results. Dr. Carabetta opined Munoz had congenital, or hereditary, spondylolysis. In his opinion, the prevailing factor for Munoz' current impairment was her preexisting condition. Although he did not believe Munoz' work accident was the prevailing factor for her impairment, he determined under the Fourth Edition of the AMA Guides Munoz had a 25 percent whole body impairment for her back condition.

On cross-examination, Dr. Carabetta was asked about the differences between Munoz' pre- and post-accident MRIs. Dr. Carabetta testified Munoz' pre-accident MRI indicated degenerative changes at all levels with some osteophyte formation. The post-accident MRI showed a congenital change at the L5-S1 level without spondylolisthesis.

In September 2016, Dr. Terrence Pratt performed a court-ordered independent medical evaluation of Munoz. He also reviewed all of Munoz' medical records, including Dr. Fluter's and Dr. Carabetta's evaluations. During his deposition testimony, Dr. Pratt testified there were structural changes between Munoz' pre- and post-accident MRI. Specifically, Munoz' post-accident MRI indicated bilateral spondylolysis, a condition not present in her pre-accident MRI. Dr. Pratt testified spondylolysis can result from a stress event—like a fall—or from natural degeneration. According to Dr. Pratt, the condition more commonly results from natural degeneration.

Dr. Pratt testified Munoz' medical records showed she had complained of low back pain months before her work accident. He also found Munoz had prior impairment to her bilateral upper extremities, cervical spine, and left knee.

Based on Dr. Pratt's examination of Munoz and review of her medical records, he found Munoz' work accident was the prevailing factor in causing soft tissue involvement in Munoz' lumbosacral region. He determined Munoz' other impairments—including her low back pain with left lower extremity type symptoms—were preexisting. Dr. Pratt testified it was probable Munoz' work accident aggravated her low back condition, but it was not the prevailing factor in causing her resulting impairment. Based on the Fourth Edition of the AMA Guides, Dr. Pratt attributed a five percent whole person impairment to Munoz' soft tissue involvement from the work-related accident.

The ALJ held a regular hearing in October 2017. In March 2018, the ALJ found Munoz met with personal injury by accident, but the accident did not arise out of and in the course of her employment. Based on that finding, the ALJ denied Munoz compensation. Munoz requested Board review of the denial. In its September 2018 decision, the Board agreed with the ALJ that Munoz sustained personal injury by accident, but it reversed the ALJ's holding that her injury did not arise out of and in the course of her employment because Munoz' injury was causally connected to the requirements of her work:

> "[T]he claimant fell when carrying out a requirement of her job. There is no indication any significant amount of sitting was mandated by her work, and she was performing a work-connected activity, delivering food, a task essential to the performance of her job, and a task in which walking was compulsory. The overall context surrounding claimant's accidental injury was connected with the requirements of claimant's job and was inherent in claimant's job requirements."

The Board remanded for the ALJ to address the extent of Munoz' permanent partial disability, if any. On remand, the ALJ's September 2018 decision found:

> "[Munoz] works in food nutrition in the kitchen. She prepares food and takes the food in carts. She was injured on July 30, 2013 when she left a food cart with another employee.

6

She stepped out of the elevator, she lost control and fell. Her foot got stuck on the floor. She fell onto something like linoleum. While lying there, her head started to hurt a lot, her knees, elbow, neck and back (mid hip into buttocks area of the spine through the mid-back)."

The ALJ also found Dr. Pratt to be the most reliable and adopted his medical opinion. Based on Dr. Pratt's opinion, the ALJ determined Munoz' accident was the prevailing factor in causing her soft tissue involvement in her lumbosacral region and attributed a five percent whole person impairment to the injury. The ALJ found the accident was not the prevailing factor in causing Munoz' other impairments, including her low back pain with left lower extremity radicular type symptoms.

The ALJ awarded Munoz 20.75 weeks of permanent partial general disability compensation at a rate of $250.30 per week for a total of $5,193.73. Both parties sought review by the Board. SWMC argued the Board's September 2018 decision that Munoz' accident was causally connected to the requirements of her work was error because the injury arose out of a neutral risk. Munoz argued the accident was the prevailing factor in causing a 25 percent whole person impairment for her back condition.

In March 2019, the Board affirmed the ALJ's award in all respects. Munoz timely appeals, and SWMC cross-appeals.

ANALYSIS

*Standard of Review*

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs our review of cases arising under K.S.A. 2019 Supp. 44-501 et seq., the Workers Compensation Act (Act). K.S.A. 2019 Supp. 44-556(a). "At a hearing before the Board, a

claimant has the burden of proving his or her right to compensation." *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015). On appeal, the party claiming error has the burden to show it. See K.S.A. 77-621(a)(1).

"The interpretation or construction of the [Act] is a question of law. But once that interpretation or construction occurs, the ultimate question of whether an accident arises out of and in the course of employment is a question of fact." *Estate of Graber v. Dillon Companies*, 309 Kan. 509, 513, 439 P.3d 291 (2019). We review a challenge to the Board's factual findings in light of the record as a whole to determine whether those findings are supported by substantial evidence. See K.S.A. 77-621(c)(7). "Substantial evidence is 'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.'" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015).

Under the KJRA, reviewing the Board's factual findings in light of the record as a whole means:

> "[T]he adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record . . . cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 77-621(d).

After reviewing all of the evidence, we determine "whether the evidence supporting the Board's decision has been so undermined by cross-examination or other evidence that it is insufficient to support its decision." *Moore*, 51 Kan. App. 2d at 138.

DID MUNOZ' ACCIDENT ARISE OUT OF AND IN THE COURSE OF HER EMPLOYMENT?

Munoz' appeal and SWMC's cross-appeal both center on K.S.A. 2019 Supp. 44-508(f)(2)(B), which provides:

"An injury by accident shall be deemed to arise out of employment only if:

"(i) There is a causal connection between the conditions under which the work is required to be performed and the resulting accident; and

"(ii) the accident is the prevailing factor causing the injury, medical condition and resulting disability or impairment."

SWMC argues on cross-appeal: (1) the Board misapplied subsection (f)(2)(B)(i) when it found Munoz' injury was causally connected to the requirements of her work, and (2) substantial evidence does not support the Board's factual finding that Munoz' accident was causally connected to her work requirements.

On the other hand, Munoz argues the Board misapplied subsection (f)(2)(B)(ii) when it found her accident was not the prevailing factor in causing her low back pain with left lower extremity type symptoms. SWMC alternatively argues the Board correctly applied subsection (f)(2)(B)(ii), assuming we disagree with its argument under subsection (f)(2)(B)(i).

Given the structure of both Munoz' and SWMC's arguments on appeal, we begin by addressing SWMC's arguments on cross-appeal. If we agree with SWMC's arguments on cross-appeal, then Munoz' argument in support of her request for workers compensation benefits and SWMC's alternative argument are both moot. As more fully explained later, Munoz' argument requires our consideration on the merits.

9

A.    *Was Munoz' accident causally connected to the requirements of her work?*

As a general rule, an employee's injury is "compensable only if it arises out of and in the course of employment." K.S.A. 2019 Supp. 44-508(f)(2). For an injury by accident to "arise out of" one's employment, there must be "a causal connection between the conditions under which the work is required to be performed and the resulting accident." K.S.A. 2019 Supp. 44-508(f)(2)(B)(i).

Under K.S.A. 2019 Supp. 44-508(f)(3)(A), there are four classes of injuries excluded from this general rule:

"(i) Injury that occurred as a result of the natural aging process or by the normal activities of day-to-day living;

(ii) accident or injury that arose out of a *neutral risk with no particular employment or personal character*;

(iii) accident or injury that arose out of a risk personal to the worker; or

(iv) accident or injury that arose either *directly or indirectly from idiopathic causes*." (Emphases added.)

SWMC argues the Board erred in holding Munoz' accident "arose out of" her employment because subsections (f)(3)(A)(ii) and (iv) apply to Munoz.

Before 2011, a claimant was entitled to workers compensation only if his or her injury arose out of and in the course of employment. See K.S.A 2010 Supp. 44-501(a). But "the Act did not define 'arising out of and in the course of employment' except to exclude injuries suffered while coming and going from work or sustained at recreational or social events." *Graber*, 309 Kan. at 514; see K.S.A. 2010 Supp. 44-508(f). The Legislature amended the Act extensively in 2011, adding the causal connection requirement under K.S.A.  44-508(f)(2)(B)(i) and the categorical exclusions under K.S.A. 44-508(f)(3)(A). See L. 2011, ch. 55, § 5. This statutory change increased the burden on

the employee to show the injury was causally connected to the employee's employment duties.

SWMC argues Munoz' accident was not causally connected to the requirements of her work because at the time of the accident, Munoz had completed her work-related task—pushing the food cart—and her subsequent walk down the hallway was purely a neutral activity. Under SWMC's reasoning, Munoz' fall would have arisen out of her employment if she fell *before* she delivered the food but not *after*. SWMC's argument fails under the Kansas Supreme Court's decision in *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 257 P.3d 255 (2011).

Bryant, a service technician, stooped over to grab a tool out of his tool belt while working on a service call. When he turned around after grabbing the tool to work on some equipment, he aggravated a preexisting back condition. Both the ALJ and the Board found Bryant was injured in the course of employment. A panel of our court reversed, holding Bryant was precluded from compensation because his injuries were the result of normal activities of day-to-day living. Bryant appealed to the Kansas Supreme Court.

The *Bryant* court held the primary question in determining whether an injury arose out of and in the course of employment is whether the activity resulting in the injury was inherent to the performance of the job. The *Bryant* court found whether a claimant's injury is work connected depends on the overall context of the claimant's activity when injured and not the claimant's isolated movements:  "The statutory scheme does not reduce the analysis to an isolated movement—bending, twisting, lifting, walking, or other body motions—but looks to the overall context of what the worker was doing—welding, reaching for tools, getting in or out of a vehicle, or engaging in other work-related activities." 292 Kan. at 596. Thus, because Bryant was in the process of completing work-related tasks at the time of his injury, the court held Bryant's injury arose out of his employment. 292 Kan. at 596.

11

Here, the ALJ's 2018 decision on remand adopted the Board's 2018 holding that Munoz' accident was causally connected to the requirements of her work because Munoz "was performing a work-connected activity, delivering food, a task essential to the performance of her job, and a task in which walking was compulsory." Relying on *Bryant*, the Board's 2018 order found "[t]he overall context surrounding claimant's accidental injury was connected with the requirements of claimant's job and was inherent in claimant's job requirements."

The Board's 2019 decision affirming the ALJ did not misapply K.S.A. 2019 Supp. 44-508(f)(2)(B)(i). The Board applied *Bryant* and properly looked to the overall context of Munoz' activity at the time of the accident and determined her activity was inherent to the performance of her job—delivering food to patients. SWMC's argument leads to the kind of analysis *Bryant* warned against. Even though Munoz had already delivered the food to Toney when her accident occurred, she was still in the process of completing a task inherent to the performance of her job when she fell.

We find another panel's recent decision undermines SWMC's argument. In *Johnson v. Stormont Vail Healthcare Inc.*, 57 Kan. App. 2d 44, 445 P.3d 1183 (2019), *rev. denied* February 25, 2020, Johnson was injured when she tripped and fell while walking down a hallway to clean another area of the hospital. Johnson "could not say definitively what made her fall—whether she slipped or if her foot caught on something sticky." 57 Kan. App. 2d at 45. She fell at work again about nine months later. Like the first time, she did not know what caused her to fall. When Johnson sought workers compensation benefits, the ALJ awarded her compensation for both falls. Stormont Vail requested review from the Board and argued Johnson's injuries resulted from neutral risks or idiopathic causes. The Board, however, disagreed and held Johnson's injuries were compensable because: "'Neither fall involved what would be only a neutral risk, but rather they involved neutral risk with a particular employment character. Walking was

12

required to do the work and Johnson was injured while walking.'" 57 Kan. App. 2d at 47-48.

On appeal to this court, the *Johnson* panel found neutral risks that have a particular employment character are compensable under K.S.A. 2019 Supp. 44-508(f)(3)(A)(ii). 57 Kan. App. 2d at 51-52. The panel also found K.S.A. 2019 Supp. 44-508(f)(3)(A)(ii)'s qualifying phrase—"which have no particular employment . . . character"—originated from *Hensley v. Carl Graham Glass*, 226 Kan. 256, 258, 597 P.2d 641 (1979), where our Supreme Court explained:

> "There are three general categories of risks in workmen's compensation cases: (1) those distinctly associated with the job; (2) risks which are personal to the workman; and (3) the so-called *neutral risks which have no particular employment or personal character*." (Emphasis added.)

Based on the language of K.S.A. 2019 Supp. 44-508(f)(3)(A)(ii) and the use of the phrase "which have no particular employment . . . character" in our caselaw, the *Johnson* panel reasoned: "[T]he 2011 amendments to our Act have not modified the law of neutral risks, but have explicitly incorporated these technical terms into the law." 57 Kan. App. 2d at 50.

The *Johnson* panel went on to correctly define the employee's and employer's burden of proof. The panel found the claimant initially has the burden to show a right to compensation. Once the claimant has met his or her burden, the employer may seek relief from liability based on a statutory defense or exclusion such as a neutral risk. 57 Kan. App. 2d at 53. Otherwise, the claimant would have to prove his or her injury *did not* arise out of one of the exclusions provided under K.S.A. 2019 Supp. 44-508(f)(3)(A). Ultimately, the panel affirmed the Board's decision and found Johnson's injury was compensable. 57 Kan. App. 2d at 54-55.

Like Johnson, Munoz' injury did not arise out of a neutral risk under K.S.A. 2019 Supp. 44-508(f)(3)(A)(ii) because her activity at the time of the accident had a particular employment character. Although walking by itself is a neutral risk, Munoz was walking in order to perform a task required by her job. SWMC recognizes the *Johnson* panel's decision is unfavorable to its argument but argues it was wrongly decided. We do not believe it was.

The crux of SWMC's argument is *Johnson* incorrectly found the Legislature codified existing caselaw on neutral risks when it enacted the 2011 amendments to K.S.A. 44-508(f)(3)(A)(ii). In support, SWMC cites *Graber v. Dillon Companies*, 52 Kan. App. 2d 786, 377 P.3d 1183 (2016), *aff'd* 309 Kan. 509, 439 P.3d 291 (2019), and *Gould v. Wright Tree Service, Inc.*, No. 114,482, 2016 WL 2811983 (Kan. App. 2016) (unpublished opinion). In both cases, our court's panels incidentally noted the 2011 amendments to the Act modified the law of neutral risk under our caselaw. See *Graber*, 52 Kan. App. 2d at 795-96; *Gould*, 2016 WL 2811983, at *4.

But under the facts of this case, whether the 2011 amendments to the Act adopted or abrogated existing caselaw is a distinction that makes no difference. The amended statutes apply to Munoz because they were in place when she was injured and filed her claim, and SWMC's argument fails under the plain language of the current neutral risk statute. See K.S.A. 2019 Supp. 44-508(f)(3)(A)(ii); *Bryant*, 292 Kan. at 588.  If a neutral risk with no particular employment character does not arise out of a worker's employment, then it follows a neutral risk *with* an employment character *does* arise out of a worker's employment.

As a panel of this court explained in *Netherland v. Midwest Homestead of Olathe Operations*, No. 119,873, 2019 WL 4383374, at *11 (Kan. App. 2019) (unpublished opinion):

14

"K.S.A. 2018 Supp. 44-508(f)(3)(A)(ii) is not a meaningless provision. For example, if an employee fell for no reason while on a lunch break and was performing no job duties at the time of the fall, this scenario might qualify as an accident or injury which arose out of a neutral risk with no particular employment or personal character."

SWMC also argues the *Johnson* panel misapplied the Act when it held the burden shifts to the employer to assert an exclusion that bars compensation once the claimant has met his or her initial burden to show a right to compensation. See 57 Kan. App. 2d at 53. SWMC generally asserts there is nothing in the Act that allows for a shifting burden of proof.

A claimant has the burden to establish a right to compensation as well as the various conditions on which his or her right depends—i.e., there was a causal connection between the conditions under which her work had to be performed and the resulting accident. See K.S.A. 2019 Supp. 44-501b(c); K.S.A. 2019 Supp. 44-508(f)(2)(B)(i). Although the Act itself is silent on whether the burden of proof may shift to the employer, it is well established under our caselaw the employer has the burden to prove a defense or exception relieving it from liability under the Act. See *Messner v. Continental Plastic Containers*, 48 Kan. App. 2d 731, 751, 298 P.3d 371, *rev. denied* 297 Kan. 1246 (2013). Our court's burden-shifting analysis in *Johnson* was not error. To hold otherwise would force a claimant to both prove his or her injury was work related under K.S.A. 2019 Supp. 44-508(f)(2)(B)(i) and disprove every possible reason why his or her injury was not compensable under K.S.A. 2019 Supp. 44-508(f)(3)(A)(i)-(iv). Such a construction is unreasonable, and we must construe statutes to avoid unreasonable results. See *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014).

In its reply brief, SWMC argues the evidence supporting the Board's decision has been so undermined by other evidence that it is insufficient to support its decision. SWMC points out certain employees' testimony reflecting Munoz said immediately after

15

the accident she did not know what caused her to fall. SWMC also points out inconsistencies between Munoz' and other employees' testimony about the exact place in the hallway where Munoz fell.

"[W]e do not weigh conflicting evidence except to determine whether the evidence supporting the Board's decision has been so undermined by cross-examination or other evidence that a reasonable person would not accept it as support of the Board's factual findings." *Wimp v. American Highway Technology*, 51 Kan. App. 2d 1073, 1076, 360 P.3d 1100 (2015). Here, neither cross-examination nor other evidence in the record undermines Munoz' testimony to such a degree it no longer constitutes substantial evidence in support of the Board's factual finding. The Board adopted the ALJ's finding in its 2018 decision that on July 30, 2013, Munoz left a food cart with another employee, stepped out of the elevator, and then lost control and fell. At the regular hearing, Munoz testified she stepped inside the elevator to give the food cart to Toney. After she gave the food to Toney, Munoz took a step out of the elevator, her shoe "stopped," and she lost control and fell. Two SWMC employees at the scene testified Munoz fell shortly after handing the food to Toney. Whether Munoz fell one step outside of the elevator or midway down the hallway is irrelevant. None of the evidence shows Munoz fell while walking during a non-work-related errand.

SWMC also argues Munoz' accident is not compensable because it arose from an idiopathic cause. See K.S.A. 2019 Supp. 44-508(f)(3)(A)(iv). In support of its claim, SWMC points to certain employees' testimony that Munoz could not identify what caused her to fall immediately after the event as they provided her medical care.

The Act does not define "idiopathic causes," but the Kansas Supreme Court recently held it means "a medical condition or medical event of unknown origin that is peculiar to the injured individual." *Graber*, 309 Kan. 509, Syl. ¶ 6. However, SWMC's

16

argument fails because it provides no evidence to show Munoz' accident arose directly or indirectly from a medical condition or event.

The Board did not misapply the Act when it found the neutral risk and idiopathic exclusions under K.S.A. 2019 Supp. 44-508(f)(3)(A)(ii) and (iv) did not apply to Munoz. Further, substantial evidence supports the Board's factual findings that Munoz' accident arose out of and in the course of employment, was not the result of a neutral risk with no particular employment character, and was not a direct or indirect result of an idiopathic cause. Instead, Munoz' injury occurred in the overall context of delivering food to patients, a task inherent to the performance of her job at SWMC.

Accordingly, we find Munoz' injury was causally connected to the work she was required to perform because she was in the process of completing the delivery of food to hospital patients.

B.      *Was Munoz' accident the prevailing factor causing the injury, medical condition, and resulting disability or impairment?*

Because we find Munoz' accident was causally connected to the requirements of her work, we now address Munoz' argument on appeal. Munoz argues the ALJ's prevailing factor analysis under K.S.A. 2019 Supp. 44-508(f)(2)(B)(ii) —affirmed by the Board's 2019 decision—was error because the accident was also the prevailing factor in causing her low back pain with left lower extremity type symptoms. SWMC asks us to find the ALJ's prevailing factor analysis was correct assuming we find Munoz' injury arose out of her employment and was causally connected.

"'When an appellant alleges the Board erroneously applied the law to undisputed facts, [we have] de novo review of the issue.'" *Nuessen v. Sutherlands*, 51 Kan. App. 2d 616, 618, 352 P.3d 587 (2015). "We have unlimited review of questions involving the

interpretation or construction of a statute, owing 'no significant deference' to the [agency or] Board's interpretation or construction." *Le v. Armour Eckrich Meats*, 52 Kan. App. 2d 189, 193, 364 P.3d 571, *rev. denied* 301 Kan. 1046 (2015).

The most fundamental rule of statutory construction is "the intent of the legislature governs if that intent can be ascertained." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). We must first determine legislative intent by looking to the words of the statute, "giving common words their ordinary meanings." *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). However, when a statute is plain and unambiguous, we need not resort to statutory construction. 309 Kan. at 150.

Again, an employee's injury must arise "out of and in the course of employment" to be compensable. K.S.A. 2019 Supp. 44-508(f)(2). An injury by accident arises out of employment only if the work accident is the "*prevailing factor* causing the injury, medical condition and resulting disability or impairment." (Emphasis added.) K.S.A. 2019 Supp. 44-508(f)(2)(B)(ii). The prevailing factor is the "primary factor, in relation to any other factor." K.S.A. 2019 Supp. 44-508(g). And an injury is limited to a "lesion or change in the physical structure of the body, causing damage or harm." K.S.A. 2019 Supp. 44-508(f)(1). Thus, for an injury to be recoverable, the work accident—not the preexisting condition—must be the prevailing factor causing the injury and resulting impairment. K.S.A. 2019 Supp. 44-508(d); see *Cramer v. Presbyterian Manors*, No. 119,581, 2019 WL 4558050, at *5 (Kan. App. 2019) (unpublished opinion).

A claimant's compensation under the Act depends on the nature of the claimant's impairment. See *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 522, 154 P.3d 494 (2007). K.S.A. 2019 Supp. 44-510c governs compensation for temporary and permanent total disabilities, while K.S.A. 2019 Supp. 44-510d covers certain permanent partial disabilities and K.S.A. 2019 Supp. 44-510e governs compensation for temporary or

18

permanent partial general disabilities. Here, the Board adopted the ALJ's finding that Munoz sustained a permanent partial general disability not covered by the schedule of disabilities under K.S.A. 2019 Supp. 44-510d, so K.S.A. 2019 Supp. 44-510e applied. See K.S.A. 2019 Supp. 44-510e(a).

Under K.S.A. 2019 Supp. 44-510e(a)(2), to recover permanent partial general disability, a claimant must prove he or she is

"(A)    . . . disabled in a manner which is partial in character and permanent in quality . . . .

. . . .

"(B)    The extent of permanent partial general disability shall be the percentage of functional impairment the employee sustained on account of the injury as established by competent medical evidence."

Under K.S.A. 2019 Supp. 44-501(e), an award for permanent partial impairment must "be reduced by the amount of functional impairment *determined to be preexisting*." (Emphasis added.)

Munoz does not argue substantial evidence failed to support the Board's decision. Instead, she makes a purely legal argument under *Le*, 52 Kan. App. 2d 189, and claims even if her low back pain were preexisting, it is still compensable because her post-accident MRI indicated a new injury—spondylolysis. The *Le* panel held "accidental injuries resulting in a new physical finding, or a change in the physical structure of the body, are compensable despite the claimant also having sustained an aggravation of a preexisting condition." 52 Kan. App. 2d 189, Syl. ¶ 5. But Munoz' argument fails because she leaves out an important distinction made by the *Le* court.

In *Le*, the claimant fell at work and sustained a vertebral fracture. Before the accident, Le had osteoporosis but did not experience any symptoms from it. After the

19

accident, Le suffered from chronic pain that prevented her from going back to work. Two of the three doctors who testified about Le's condition determined her pain was caused by the fracture and not her preexisting osteoporosis. However, the Board adopted the testimony of another doctor—Dr. Ciccarelli—who found Le's pain was only caused by an aggravation of her osteoporosis and reversed the ALJ's award. Accordingly, the Board denied Le compensation. Le appealed to our court.

Quoting K.S.A. 2011 Supp. 44-508(f)(2)(B)(ii), the *Le* panel found Le's accident must be "'the prevailing factor causing the injury, medical condition, *and resulting disability or impairment*.'" (Emphasis added.) 52 Kan. App. 2d at 200. Although it was undisputed the accident was the prevailing factor of Le's injury—the vertebral fracture— the panel found substantial evidence did not support the Board's conclusion that the prevailing factor causing Le's *resulting disability or impairment* was her preexisting osteoporosis. The remaining evidence showed Le was permanently and totally disabled because the accident caused the entirety of her chronic pain. Accordingly, the panel reversed and reinstated the ALJ's award. 52 Kan. App. 2d at 200.

Munoz' argument ignores *Le*'s prevailing factor analysis under K.S.A. 2019 Supp. 44-508(f)(2)(B)(ii). Although an accidental injury resulting in a new physical finding may be compensable despite the fact the accident aggravated the claimant's preexisting condition, the accident must *also* be the prevailing factor causing the claimant's *resulting disability or impairment*. In other words, the accident itself must be the prevailing factor causing the claimant's resulting disability or impairment, not his or her preexisting condition.

Munoz also cites *Sowers v. Kingman Community Hosp.*, No. 1,065,624, 2016 WL 858316 (Kan. Work. Comp. App. Bd. February 22, 2016), in support of her argument but concedes *Sowers* was decided under the *Le* analysis. *Sowers* therefore provides no support for her position.

The Board did not err when it adopted the ALJ's finding that Munoz' low back pain with left lower extremity type symptoms was not compensable because the prevailing factor causing her low back pain was her preexisting condition. The Board correctly adopted the ALJ's holding limiting Munoz' permanent partial general disability award to the soft tissue injury in her lumbosacral region at five percent permanent partial disability to the body as a whole.

Affirmed.